## THE FANNY J. CROSBY MEMORIAL, INC. *v.* CITY OF BRIDGEPORT (SC 16767)

Sullivan, C. J., and Borden, Norcott, Katz and Vertefeuille, Js.

Argued October 24—officially released December 31, 2002

*David M. Lehn,* with whom, on the brief, was *Kevin L. Burns,* for the appellant (plaintiff).

*Russell D. Liskov,* associate city attorney, for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiff, The Fanny J. Crosby Memorial, Inc., appeals[1] from the judgment of the trial court dismissing its appeal from the decision of the board of tax

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

review (board)[2] for the defendant, the city of Bridgeport (city), which determined that certain real property owned by the plaintiff did not qualify for an exemption from property taxes pursuant to General Statutes § 12-81 (7).[3] The trial court determined that, because § 12-81 (7) provides that "housing for persons or families

[2] The plaintiff appealed pursuant to General Statutes § 12-117a, which provides in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom . . . to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . ."

When the plaintiff first challenged the assessment of its property on the city of Bridgeport's 1996 grand list, the board was known as the board of tax review. The board is now known as the board of assessment appeals. See Public Acts 1995, No. 95-283, § 17, which became effective October 1, 1996.

[3] General Statutes § 12-81 (7) provides in relevant part: "Subject to the provisions of sections 12-87 and 12-88, the real property of, or held in trust for, a corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of, or held in trust for, any such corporation, provided (A) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes, and provided (B) in 1965, and quadrennially thereafter, a statement shall be filed on or before the first day of November with the assessor or board of assessors of any town, consolidated town and city or consolidated town and borough, in which any of its property claimed to be exempt is situated. Such statement shall be filed on a form provided by such assessor or board of assessors. On and after July 1, 1967, housing subsidized, in whole or in part, by federal, state or local government and housing for persons or families of low and moderate income shall not constitute a charitable purpose under this section . . . ."

For purposes of the plaintiff's appeal from the assessment on the grand list of 1996; see footnote 7 of this opinion; the relevant revision of § 12-81 (7) was the 1995 revision. A minor, technical change, not relevant to this appeal, was made to that subdivision in 2000. See Public Acts 2000, No. 00-215, § 3. For purposes of clarity, we refer herein to the current revision of § 12-81 (7).

of low and moderate incomes shall not constitute a charitable purpose," the plaintiff's property, which includes some residential rental units for the elderly, did not qualify for tax-exempt status. The sole issue on appeal is whether the trial court properly determined that the plaintiff's use of the property precludes tax-exempt status as a charitable purpose under the statute. We affirm the judgment of the trial court.

The record reveals the following facts. The plaintiff was founded in the 1920s as a charitable organization to provide care for the elderly. To accomplish that purpose, the plaintiff purchased properties, including structures located at 1078–90 Fairfield Avenue and 44 Sherwood Avenue in the city,[4] which it used for housing the elderly. From approximately 1927 to 1996, the city treated this property as tax-exempt. The plaintiff also qualified as a tax-exempt organization under § 501 (c) (3) of the Internal Revenue Code. See 26 U.S.C. § 501 (c) (3) (1994).

The plaintiff's articles of association and bylaws provide the basis for the operation of its property at 1078–90 Fairfield Avenue. Article II of the plaintiff's articles of association provides in part that the purpose of the corporation is "[t]o provide for aged men and women, whether married or single, a comfortable, happy residence in Bridgeport . . . where they may pass their declining years among congenial companions and have necessary care . . . to receive and administer or expend legacies, gifts, endowments, trusts or other funds bequeathed, subscribed or given for the purpose of establishing, equipping, maintaining, renewing or replacing said home; to acquire and hold, lease, sell, exchange or otherwise convey property so acquired provided the proceeds of such lease, sale, exchange or

---

[4] On appeal, the plaintiff contests only the denial of tax-exempt status for the property located at 1078–90 Fairfield Avenue.

conveyance shall be devoted solely to the purposes for which the said corporation is hereby created; to transact such business or businesses as may be comfortable with the purposes of said home and as may be conducive to the building up of the assets of said corporation or to the comfort and well-being of the inmates of said home." Article VII (4) of the plaintiff's bylaws further provides that a person employed as the home's matron "shall receive the rent from paying guests, and shall pay all bills incidental to the operation of the Home."

On December 12, 1996, due to financial problems, the plaintiff and the Bridgeport Rescue Mission (mission) entered into an agreement under which the mission would control and operate the elderly housing on the plaintiff's property. The mission is a charitable religious organization that was formed in 1993 and also is a federal tax-exempt organization. The mission also provides other programs on the plaintiff's property, including the operation of a soup kitchen and a substance abuse treatment program. Since 1996, the number of elderly persons residing on the plaintiff's property has decreased to three. At the time of the trial court proceedings in this case, approximately thirty-five people involved in the mission's residential substance abuse program were residing[5] on the property, in addition to occasional homeless persons who would sleep on the premises but leave during the day.

On October 1, 1996, the city's tax assessor listed the property at 1078–90 Fairfield Avenue on the city's grand

---

[5] The substance abuse program required participants to agree to a one year residential commitment. Milton J. Kalman, who worked for the mission and was the plaintiff's volunteer executive director, testified that the substance abuse program was a one year program of "in-house controlled activity of individuals who come in with drug, alcohol and/or other problematic things." When asked by the plaintiff's attorney if the participants reside in the facility, Kalman responded: "Yes, [s]ir. . . . [W]e want them in a controlled environment, because they're out of control people . . . . We get them up. We put them down. And we teach them all day."

list, indicating that the property was no longer considered to be tax-exempt. In response, the plaintiff filed a quadrennial statement with the assessor pursuant to § 12-81 (7) seeking renewal of the plaintiff's tax-exempt status. The application, dated October 29, 1996, consisted of a tax-exempt return form dated September 16, 1993, which indicated that the plaintiff's purpose was "[t]o provide a home for aged men and women," and that "[r]ooms in [the] building located on parcel at 1078–90 Fairfield Avenue are rented to tenants of . . . home for [the] aged."

On March 7, 1997, a property tax auditor from the city assessor's office issued a letter to the plaintiff indicating that its tax exempt-status was denied because "[t]he information you have provided indicate[s] that the subject properties . . . are used for housing. Connecticut General Statutes specifically disallow exempt status for property used for such purposes." Pursuant to General Statutes (Rev. to 1997) § 12-89,[6] the plaintiff appealed from that decision to the board, which denied its appeal.

The plaintiff then appealed from that decision to the trial court, where the matter was referred to a judge

---

[6] General Statutes (Rev. to 1997) § 12-89 provides: "The board of assessors of each town, consolidated town and city or consolidated town and borough shall inspect the statements filed with it and required by sections 12-81 and 12-87 from scientific, educational, literary, historical, charitable, agricultural and cemetery organizations, shall determine what part, if any, of the property claimed to be exempt by the organization shall be in fact exempt and shall place a valuation upon all such property, if any, as is found to be taxable, provided any property acquired between assessment dates by any tax-exempt organization shall first become exempt on the tax list next succeeding the date of acquisition. Any organization filing a tax-exempt statement, aggrieved at the action of the board of assessors, may appeal, within the time prescribed by law for such appeals, to the board of assessment appeals. Any such organization claiming to be aggrieved by the action of the board of assessment appeals may, within two months from the time of such action, make application in the nature of an appeal therefrom to the superior court for the judicial district of Hartford-New Britain pursuant to section 12-39l."

trial referee.[7] The trial court, *Hon. Arnold W. Aronson,* judge trial referee, first concluded that the plaintiff was entitled to review of the board's decision, because the plaintiff first had appealed from the assessor's decision to the board, which subsequently denied the plaintiff's appeal. The trial court then addressed the merits of the plaintiff's appeal, concluding that the plaintiff's property was not tax-exempt under § 12-81 (7) because the plaintiff did not sustain its burden to show that it satisfied the charitable exemption requirements under the statute. Specifically, the trial court concluded that the elderly housing provided by the plaintiff was not a charitable purpose because the plaintiff received rent from some of those who stayed on the premises and because § 12-81 (7) expressly excludes low and moderate income housing from being a charitable purpose. Accordingly, the trial court dismissed the plaintiff's appeal. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly concluded that the exception to tax-exempt status under § 12-81 (7), which provides that "housing for persons or families of low and moderate income shall not constitute a charitable purpose," applied in the present case. Specifically, the plaintiff contends that, because it is not subsidized by government funds, the statutory exception does not apply. The plaintiff further contends that the de minimis use of its property for residential and overnight use does not alter the overwhelming use of the property for charitable purposes. We disagree with both contentions.

We first set forth our standard of review. "We review the trial court's conclusion in a tax appeal pursuant to the well established clearly erroneous standard of

[7] The plaintiff subsequently amended its appeal to include the assessments on the grand lists of 1997, 1998, 1999 and 2000. The references to the relevant statutes in this opinion are to the revisions in effect with regard to the plaintiff's challenge to the assessment on the 1996 grand list.

review. Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 23, 807 A.2d 955 (2002).

"The general rule of construction in taxation cases is that provisions granting a tax exemption are to be construed strictly against the party claiming the exemption." *Loomis Institute* v. *Windsor*, 234 Conn. 169, 176, 661 A.2d 1001 (1995). "Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms. . . . It is also well settled that the burden of proving entitlement to a claimed tax exemption rests upon the party claiming the exemption." (Citation omitted; internal quotation marks omitted.) *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 560, 783 A.2d 993 (2001). We strictly construe such statutory exemptions because "[e]xemption from taxation is the equivalent of an appropriation of public funds, because the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of others. . . . The owners of tax-exempt property in the community derive the same benefits from government as other property owners but pay no property taxes for those benefits." (Citation omitted; internal quotation marks omitted.) *United Church of Christ* v. *West Hartford*, 206 Conn. 711, 718–19, 539 A.2d 573 (1988).

Determining whether a property is tax-exempt is a fact intensive inquiry. "Under our statutes, there are three requirements for a tax exemption. The property must belong to or be held in a trust for an organization exempt from taxation under the provisions of . . .

§ 12-81; it must be held for one of the purposes stated in that statute's list of exemptions; and *it must produce no rent, profits or income.*" (Emphasis added.) Id., 718.

Moreover, in order for an organization to be granted tax-exempt status "[it] must be *exclusively* charitable, not only in the purposes for which it is formed and to which its property is dedicated, but also in the manner and means it adopts for the accomplishment of those purposes. . . . Thus, [w]hether the property for which exemption is claimed is actually and exclusively used for . . . [charitable] purposes must be determined from the facts of the case. . . . The extent to which an organization uses its property for purposes not directly related to its charitable purpose, therefore, is relevant to the determination of whether the organization's property is entitled to tax-exempt status under § 12-81 (7)." (Citations omitted; emphasis added; internal quotation marks omitted.) *H.O.R.S.E. of Connecticut, Inc.* v. *Washington,* supra, 258 Conn. 563–64; accord *Waterbury First Church Housing, Inc.* v. *Brown,* 170 Conn. 556, 562, 367 A.2d 1386 (1976).

Applying these principles to the facts of the present case, we conclude that the trial court properly determined that the plaintiff's property was not tax-exempt. First, the plaintiff's housing of elderly persons does not fit within the statutory exception because the plaintiff is authorized in its bylaws to collect rents and has collected rents from elderly persons living on the property. "The purposes for which a corporation is organized are to be found in its charter . . . ." *Waterbury First Church Housing, Inc.* v. *Brown,* supra, 170 Conn. 561. In the absence of a change to the bylaws, the plaintiff's use of the property does not qualify as a charitable purpose and therefore is not tax-exempt. See *United Church of Christ* v. *West Hartford,* supra, 206 Conn. 718. Second, the plaintiff's assertion that, because it collects rent from only *some* of its tenants, and is not

subsidized by government funds, it is within the § 12-81 (7) exemption, is without merit. Section 12-81 (7) clearly provides that "housing for persons or families of low and moderate income shall not constitute a charitable purpose under this section . . . ." Because a property must be used *exclusively* for a charitable purpose in order for it to qualify as tax-exempt; see *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, supra, 258 Conn. 563–64; *Waterbury First Church Housing, Inc.* v. *Brown*, supra, 562; the plaintiff's operation of elderly housing disqualifies it from tax-exempt status.

Although the provision of such services is a laudable goal, we must strictly construe tax-exempt exceptions. See *Loomis Institute* v. *Windsor*, supra, 234 Conn. 176. Accordingly, we conclude that the trial court properly determined that the plaintiff's property did not qualify for tax-exempt status under § 12-81 (7).

The judgment is affirmed.

In this opinion the other justices concurred.