# BELL ATLANTIC NYNEX MOBILE, INC., ET AL.
## *v.* COMMISSIONER OF REVENUE SERVICES
### (SC 17154)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued November 22, 2004—officially released April 5, 2005

*Susan Quinn Cobb*, assistant attorney general, with whom were *Louis P. Bucari, Jr.*, tax litigation director, and, on the brief, *Richard Blumenthal*, attorney general, for the appellant (defendant).

*John R. Shaughnessy, Jr.*, with whom were *Linda L. Morkan* and, on the brief, *Richard W. Tomeo*, for the appellees (plaintiffs).

*Opinion*

BORDEN, J. The issue in this appeal is whether the payment of personal property taxes on electronic data processing equipment by a partnership entitles the partners to the use of the tax credit provided by General Statutes § 12-217t.[1] The defendant, the commissioner

---

[1] General Statutes § 12-217t provides: "(a) There shall be allowed as a credit against the tax imposed by chapter 207, this chapter, chapter 208a, 209, 210, 211, or 212 or against the tax imposed pursuant to section 12-202a in an amount determined under the provisions of subsection (b) of this section with respect to the personal property taxes paid during any income year, on electronic data processing equipment. For the purposes of this section 'electronic data processing equipment' means computers, printers, peripheral computer equipment, bundled software and any computer-based equipment acting as a computer as defined under Section 168 of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, and any other such equipment reported as a Code 20 on the Personal Property Declaration as prescribed by the Secretary of the Office of Policy and Management pursuant to section 12-27.

"(b) The amount allowed as a credit in any income year shall be the full amount of the tax on such electronic data processing equipment paid pursuant to section 12-71 or 12-80a, and as defined under Section 168 of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, provided no credit shall be allowed for the payment of any interest or penalty on the tax.

"(c) The credit provided for by this section shall be allowed for any taxes owed on the grand list of October 1, 1994, and each grand list annually thereafter or included in the list prescribed under section 12-80a for such

of revenue services, appeals from the judgment of the trial court sustaining the tax appeals, brought pursuant to General Statutes § 12-237,[2] of thirteen corporate plaintiffs that hold partnership interests in Cellco Partnership (Cellco).[3] The defendant maintains that the

grand list. Such credits shall first be used by the taxpayer against the corporation business tax under this chapter, if any, and then may be used against any tax paid by the taxpayer under the provisions of chapter 207, 208a, 209, 210, 211 or 212 or the tax imposed upon a health care center under section 12-202a. The amount of credits allowable under this section in any tax year against the taxes imposed by chapter 207, 208, 208a, 209, 210, 211 or 212 or against the tax imposed on health care centers, under the provisions of section 12-202a, shall be allowable only after all other credits allowable against such taxes for such tax year have been applied.

"(d) In the case of leased electronic data processing equipment, the lessee, not the lessor, shall be entitled to claim the credit allowed pursuant to this section if the lease by its terms or operation imposes on the lessee the cost of the personal property taxes on such equipment, provided the lessor and lessee may elect, in writing, that the lessor may claim the credit provided by this section. Such election shall be attached to the tax return filed by the lessor on which such credit is claimed.

"(e) In the case of taxpayers filing a combined return pursuant to section 12-223a, the credit provided by this section shall be allowed on a combined basis, such that the amount of personal property taxes paid by such taxpayers with respect to such equipment may be claimed as a tax credit against the combined tax liability of such taxpayers as determined under this chapter. Credits available to taxpayers which are subject to tax under this chapter but not subject to tax under chapter 207, 208a, 209, 210, 211 or 212 or the tax imposed on health care centers under the provisions of section 12-202a shall be used prior to credits of companies included in such combined return which are also subject to tax under said chapter 207, 208a, 209, 210, 211 or 212 or the tax imposed upon health centers pursuant to the provisions of section 12-202a.

"(f) If the amount of credit allowable under this section exceeds the sum of (1) the corporation business tax, if any, and (2) any taxes imposed by chapter 207, 208a, 209, 210, 211 or 212 paid by the taxpayer, after all other credits allowable against such taxes have first been applied, then any balance of the credit allowable under this section remaining may be taken in any of the five succeeding income years."

[2] General Statutes § 12-237 provides in relevant part: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services under the provisions of this part may . . . take an appeal therefrom to the superior court . . . ."

[3] Cellco was not a party to the previous proceedings, and is not a party to this appeal. This case was initiated by thirteen corporations that for the

absence of any reference to a partnership in the definition of "taxpayer," as used in the statute, renders a partnership ineligible for the § 12-217t tax credit, with the result that no tax credit inures to the partnership for it to pass through to the partners. The defendant further maintains that were we to conclude that partnership eligibility for the tax credit exists, the plaintiffs could not use the credit because § 12-217t neither contains a provision that would allow the partnership to pass the tax credit through to the partners, nor incorporates federal tax concepts such that such a provision could be implied. We agree that a partnership cannot establish eligibility for a tax credit under § 12-217t and, accordingly, we reverse the judgment of the trial court.

Initially, the plaintiffs did not claim the tax credit provided for in § 12-217t for the 1995 tax year. The plaintiffs thereafter timely filed amended tax returns for that tax year pursuant to General Statutes § 12-225 (b) (1),[4] claiming refunds in the amount of the § 12-217t

tax year in question, either held partnership interests in Cellco directly or held partnership interests in Bell Atlantic Cellular Holdings, L.P., which held a general partnership interest in Cellco. Eleven of the plaintiff corporations were wholly owned, either directly or indirectly, by Bell Atlantic Corporation and were referred to as the Bell Atlantic Mobile Companies: Bell Atlantic Mobile Systems, Inc.; Metro Mobile CTS of New Haven, Inc.; Metro Mobile CTS of Tucson, Inc.; Metro Mobile CTS of Phoenix, Inc.; Metro Mobile CTS of Hartford, Inc.; Metro Mobile CTS of Charlotte, Inc.; Metro Mobile CTS of Greenville, Inc.; Metro Mobile CTS of El Paso, Inc.; Metro Mobile CTS of Albuquerque, Inc.; Metro Mobile CTS of Columbia, Inc.; and Metro Mobile CTS of Fairfield County, Inc. Another plaintiff, Telesector Resources Group, Inc., and three of its affiliates, New York Cellular Geographic Services Area, Inc., NYNEX PCS, Inc., and NYNEX Mobile Communications Company, were wholly owned, either directly or indirectly, by NYNEX Corporation; the affiliates were referred to as the NYNEX Mobil Companies. The remaining plaintiff, Bell Atlantic NYNEX Mobile, Inc., managed and conducted the affairs of Cellco. We refer in this opinion to these thirteen corporations that held partnership interests, either directly or indirectly, in Cellco, as the plaintiffs.

[4] General Statutes § 12-225 (b) (1) provides in relevant part: "Any company which fails to include in its return items of deductions or includes items of nontaxable income or makes any other error in such return may, within three years from the due date of the return, file with the commissioner an

credit. The defendant denied the plaintiffs' claims for refunds. The plaintiffs filed an administrative appeal, and the defendant issued a final determination upholding that denial. The plaintiffs subsequently appealed from the defendant's final determination to the Superior Court, which sustained the appeal and rendered judgment for the plaintiffs. This appeal followed.[5]

The following facts, as stipulated to by the parties, and procedural history are undisputed. In July, 1995, Bell Atlantic Corporation and NYNEX Corporation formed Cellco, a general partnership, by contributing the assets from their public wireless cellular communications services, commonly referred to as cellular telephone services or cellular services, to form a single cellular network covering a larger geographic area than either corporation had served separately. Prior to that time, the Bell Atlantic Mobile Companies and the NYNEX Mobile Companies, using distinct cellular services networks, had separately provided cellular services to overlapping geographic markets. Bell Atlantic Corporation contributed the assets of the Bell Atlantic Mobile Companies either directly to Cellco or to Bell Atlantic Cellular Holdings, L.P., in exchange for partnership interests in Bell Atlantic Cellular Holdings, L.P.; Bell Atlantic Cellular Holdings, L.P., then contributed its assets to Cellco in exchange for a general partnership interest in Cellco. NYNEX Corporation contributed the assets of the NYNEX Mobile Companies to Cellco in exchange for partnership interests in Cellco.

Among the assets that the partners contributed to the formation of Cellco was the electronic data processing equipment located in Connecticut that each had used

amended return, together with a claim for refund of taxes overpaid as shown by such amended return. . . ."

[5] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

in providing cellular services. Prior to its contribution to Cellco, the equipment had been listed for assessment with Connecticut municipalities on October 1, 1994, and had been assessed against those plaintiffs who owned it on that date. Once the plaintiffs formed Cellco, however, that partnership became the owner of the electronic data processing equipment. As the owner of the equipment, Cellco paid $957,718 in personal property taxes on the equipment to Connecticut municipalities during the 1995 tax year.

Although Cellco, as the owner of the electronic data processing equipment, assumed municipal property tax liability for the equipment, it bore no income tax liability pursuant to the Connecticut corporation business tax because, as a partnership, it was not a " '[t]axpayer' " as defined in General Statutes § 12-213 (a) (1).[6] Each of the plaintiffs, on the other hand, eliminated any municipal property tax liability it had for the electronic data processing equipment by transferring ownership of the equipment to Cellco, but with the formation of Cellco, became liable for the income tax on its properly apportioned distributive share of Cellco's annual income pursuant to the applicable sections of the corporation business tax.[7]

---

[6] General Statutes § 12-213 (a) (1) defines a " '[t]axpayer' " as "any corporation, foreign municipal electric utility . . . electric distribution company . . . electric supplier . . . generation entity or affiliate . . . joint stock company or association or any fiduciary thereof and any dissolved corporation which continues to conduct business but does not include a passive investment company or municipal utility . . . ."

[7] General Statutes § 12-214 (a) (1) requires "every . . . company carrying on, or having the right to carry on, business in this state . . . [to] pay, annually, a tax or excise upon its franchise for the privilege of carrying on or doing business, owning or leasing property within the state . . . such tax to be measured by the entire net income as herein defined received by such corporation or association from business transacted within the state during the income year . . . ." As partners in Cellco, each of the plaintiffs carried on business in this state, regardless of whether it carried on business in the state in any other capacity, pursuant to § 12-214 (a) (3), which provides in relevant part: "(A) A company is carrying on or doing business in this state if it is a general partner of a partnership that does business, owns or

When the plaintiffs filed their original corporation business tax returns for 1995, wherein they reported net income from the operations of Cellco, they did not claim a credit under § 12-217t for the municipal taxes paid by Cellco on the Connecticut electronic data processing equipment. As a result, the plaintiffs' payments of the corporation business tax on that portion of the Cellco net income allocable to Connecticut did not reflect the § 12-217t tax credit. The plaintiffs subsequently timely filed amended 1995 corporation business tax returns to claim the § 12-217t tax credit and claimed tax refunds on that basis.

The defendant disagreed with the plaintiffs' claim that they were entitled to the § 12-217t tax credit and denied their claims for tax refunds. In response, the plaintiffs filed administrative appeals of the defendant's decision and requested a hearing thereon, which the defendant granted, pursuant to § 12-225 (b) (2).[8] Following the hearing, the defendant issued a final determination upholding the earlier denials of the plaintiffs' refund claims based on the conclusion that "a partnership is not a taxpayer for purposes of § 12-217t and therefore would not be entitled to a tax credit that could be pass[ed] through to its partners."

The plaintiffs appealed from the defendant's decision to the Superior Court pursuant to § 12-237. See footnote 2 of this opinion. The trial court found that Cellco had owned the Connecticut electronic data processing

leases property or maintains an office in this state. (B) A company is carrying on or doing business in this state if it is a limited partner of a limited partnership . . . that does business, owns or leases property or maintains an office in this state. . . ."

[8] General Statutes § 12-225 (b) (2) provides in relevant part: "[T]he company may file with the commissioner a written protest against the proposed disallowance in which it sets forth the grounds on which the protest is based. If a protest is filed, the commissioner shall reconsider the proposed disallowance and, if the company has so requested, may grant or deny the company or its authorized representatives an oral hearing."

equipment and had paid the resultant municipal taxes. Further, it sustained the plaintiffs' appeals on the theory that because "Cellco [had] owned the tax credit as a partnership asset" and "Connecticut tax laws often incorporate [f]ederal tax principles," the § 12-217t tax credit owned by Cellco had passed through "to the corporate partners in its original form as a tax credit" consistent with those principles. Accordingly, the trial court concluded that the plaintiffs properly could use the tax credit to offset their liabilities under the corporation business tax.

The defendant maintains on appeal that, although the trial court correctly found that Cellco had owned the equipment and had paid the associated municipal taxes, those facts did not entitle Cellco to a § 12-217t tax credit because Cellco fails to satisfy the definition of a " '[t]axpayer' " as that term is used in the statute and, therefore, cannot establish eligibility to receive the credit. Furthermore, the defendant claims that, even if we were to conclude that Cellco has established eligibility for a § 12-217t tax credit, it cannot pass the tax credit through to the plaintiffs because § 12-217t contains neither an explicit pass-through provision in its language, nor an implicit pass-through provision via the incorporation of federal tax principles. The plaintiffs counter that Connecticut has implicitly adopted the federal pass-through or conduit treatment of partnership tax attributes in the corporation business tax through the legislature's incorporation of the federal income tax definition of "gross income"[9] for use in part I of the corporation business tax chapter of the General Statutes.[10] Although we agree with the plaintiffs that the

---

[9] General Statutes § 12-213 (a) (9) (A) provides in relevant part: " 'Gross income' means gross income, as defined in the Internal Revenue Code . . . ."

[10] Chapter 208 of the Connecticut General Statutes contains the corporation business tax provisions. Part I of the corporation business tax chapter, which contains General Statutes §§ 12-213 through 12-242 inclusive, concerns the imposition and payment of that tax. Part II of the corporation

incorporation of the federal income tax definition of "gross income" effects an adoption of the federal conduit treatment of partnership tax attributes in part I of the corporation business tax chapter, we conclude that Cellco's ineligibility to receive the § 12-217t tax credit precludes it from passing the credit through to the plaintiffs and, therefore, prevents the plaintiffs from using the credit.

The threshold issue in this appeal is eligibility for the tax credit. If the plaintiffs cannot establish Cellco's eligibility for the tax credit, which would require further analysis to determine if Cellco could then pass that tax credit through to them, or their own direct eligibility for the tax credit on the basis of the statutory language and conduit principles, no tax credit exists for their use. Resolution of this issue requires an analysis of § 12-217t because the tax credit exists solely as a function of state law.[11] Therefore, statutory interpretation of § 12-

business tax chapter, which contains General Statutes §§ 12-242a through 12-242z inclusive, concerns the payment of an estimated portion of that tax.

[11] Although § 12-217t contains two references to the federal tax code, these references cannot be said to create the tax credit or even to present an issue of disagreement between the parties. Subsection (a) of § 12-217t defines " 'electronic data processing equipment' " as "computers, printers, peripheral computer equipment, bundled software and any computer-based equipment acting as a computer as defined under *Section 168 of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended* . . . ." (Emphasis added.) No dispute exists concerning whether the equipment on which Cellco paid the property taxes was electronic data processing equipment as defined with respect to § 168 of the Internal Revenue Code; 26 U.S.C. § 168; the parties stipulated to that characterization of the equipment. Subsection (b) of § 12-217t provides in relevant part that "[t]he amount allowed as a credit in any income year shall be the full amount of the tax on such electronic data processing equipment paid pursuant to section 12-71 or 12-80a, and as defined under *Section 168 of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended* . . . ." (Emphasis added.) Again, no dispute exists concerning the amount of the credit; the dispute concerns whether Cellco is eligible for the credit. Accordingly, these references to the federal tax code, which only serve to define the property that may give rise to the tax credit, do not address any conduit principles.

217t, rather than the general partnership law concepts advanced by the plaintiffs, controls our determination of eligibility for the tax credit.[12] Because statutory interpretation involves a question of law, we exercise plenary review. *State* v. *Kirk R.*, 271 Conn. 499, 510, 857 A.2d 908 (2004).

"The process of statutory interpretation involves a reasoned search for the intention of the legislature.

---

[12] This approach corresponds with that taken by other jurisdictions in similar cases. In *Caveney* v. *Bower*, 207 Ill. 2d 82, 96–97, 797 N.E.2d 596 (2003), the Supreme Court of Illinois concluded that the plaintiffs, shareholders in a subchapter S corporation that incurred expenditures for research and development, could not claim a credit against their Illinois income tax liability pursuant to a statute that provided a tax credit against income taxes for such expenditures. Like a partnership, a subchapter S corporation operates as a conduit for tax attributes to its shareholders. The court based its decision on its interpretation of the statute, concluding that the plaintiffs could not claim the credit because they did not personally incur the expenses, and the subchapter S corporation could not claim the credit because it had no Illinois income tax liability. Id., 87–89.

In *L & W Construction Co.* v. *Dept. of Revenue*, 149 Wis. 2d 684, 690, 439 N.W.2d 619 (App. 1989), the Wisconsin Court of Appeals concluded that the plaintiff, a corporate general partner in a partnership, could not claim a tax credit for taxes paid on fuel and electricity sales and use by the partnership pursuant to a statute that allowed a credit for "the sales and use tax . . . *paid by the corporation* . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 687. In that case, the plaintiff argued that because it had paid a portion of the taxes in proportion to its partnership interest under the " 'aggregate theory' " of partnership law, it was entitled to claim that amount as a tax credit under the operative statute. Id., 687–88. Although the court did not dispute the plaintiff's description of the " 'aggregate theory' " of partnership law, it concluded that the issue was one of statutory interpretation, not partnership law. Id., 688–90; id., 690 ("[w]e see the issue before us not as one of partnership law but rather one of tax law").

At oral argument before this court, counsel for the plaintiffs in the present case conceded that the court's conclusion in *L & W Construction Co.* is consistent with the defendant's position but argued that the decision was "simply wrong." The plaintiffs' counsel went on to point out that in an earlier Wisconsin case, *Dept. of Revenue* v. *Gordon*, 127 Wis. 2d 71, 74, 377 N.W.2d 212 (App. 1985), the same court had concluded that the same tax credit *was* available to the sole shareholder of a subchapter S corporation. The court's conclusion in the earlier case, however, was also based on its interpretation of the statute. The plaintiffs fail to identify any case where a court has applied a general partnership principles approach instead of a statutory

. . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . .

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute." (Citations omitted; internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 327–28, 828 A.2d 549 (2003), quoting *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).[13]

---

construction approach to the question of whether a tax credit applies, and this court's research has identified no such case.

[13] "In *State* v. *Courchesne*, supra, 262 Conn. 567–78, this court explained that, as part of the judicial task of statutory interpretation, we would not follow the so-called plain meaning rule, which operates to preclude the court, in certain cases, from considering sources in addition to the statutory text in order to determine its meaning. We are cognizant that, subsequent to our decision in *Courchesne*, No. 03-154, § 1, of the 2003 Public Acts [now General Statutes § 1-2z], has legislatively overruled that part of *Courchesne* in which we stated that we would not require a threshold showing of linguistic ambiguity as a precondition to consideration of sources of the meaning of legislative language in addition to its text. *State* v. *Courchesne*, supra, 577. [General Statutes § 1-2z] provides: The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and

Along with these principles, we are also guided by the applicable rules of statutory construction specifically associated with the interpretation of tax statutes. Although "[t]his court [normally] gives considerable deference to the commissioner's interpretation of taxation statutes and regulations"; *Clinton Nurseries, Inc.* v. *Commissioner of Revenue Services*, 205 Conn. 761, 765, 535 A.2d 361 (1988); the defendant's interpretation of § 12-217t is not entitled to any special deference because it "ha[s] not previously been subjected to judicial scrutiny, [is] not the subject of a legislatively approved regulation[14] and [is] not a time tested interpretation of the statute." *Dine Out Tonight Club, Inc.* v. *Dept. of Revenue Services*, 210 Conn. 567, 570 n.3, 556 A.2d 580 (1989). Additionally, because § 12-217t operates in a manner analogous to a tax exemption in that it relieves potential taxpayers of a tax burden that they would otherwise bear, we must construe it strictly against the party claiming the credit—that is, because the credit is a matter of legislative grace, we must interpret it to include only that which falls strictly within its terms. See *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, 262 Conn. 213, 220, 811 A.2d 1277 (2002).

does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. *Paul Dinto Electrical Contractors, Inc.* v. *Waterbury*, [266 Conn. 706, 716 n.10, 835 A.2d 33 (2003)]." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 686–87 n.20, 855 A.2d 212 (2004). Although the parties alternately refer to the language of § 12-217t as "clear . . . [and] not ambiguous" and as "plain and unambiguous," we conclude that the present case does not implicate the limitation imposed upon our statutory review by [General Statutes § 1-2z] because the applicable statutory text is not plain and unambiguous.

[14] Although we take notice of the fact that the defendant's position has been published in Department of Revenue Services Informational Publication 2001(17) since November, 2001, this publication does not rise to the level of a legislatively approved regulation. See Department of Revenue Services, Guide to Connecticut Business Tax Credits (2001), Informational Publication 2001(17). Furthermore, the department of revenue services did not issue the publication until after the present case had begun.

Finally, "[i]t is . . . well settled that the burden of proving entitlement to a claimed tax exemption rests upon the party claiming the exemption." (Internal quotation marks omitted.) Id.

With these principles in mind, we examine § 12-217t to ascertain whether Cellco can establish eligibility for the tax credit, which it can pass through to the plaintiffs, or the plaintiffs can establish eligibility for the tax credit directly. That examination leads us to conclude that, because both parties present persuasive interpretations of the applicable statutes, the appeal must ultimately be resolved against the plaintiffs because those statutes do not clearly and unambiguously grant partnerships the credit provided by § 12-217t; see *Golf Digest/Tennis, Inc.* v. *Dubno*, 203 Conn. 455, 465, 525 A.2d 106 (1987); and the plaintiffs cannot establish direct eligibility for the credit.

We begin with the text of the statute. Section 12-217t consists of six subsections, four of which, namely, § 12-217t (a), (b), (c) and (e), are relevant to our analysis.

Subsection (a) of § 12-217t establishes the existence of the tax credit upon payment of personal property taxes on electronic data processing equipment, providing in relevant part: "There shall be allowed as a credit against the tax imposed by chapter 207, this chapter, chapter 208a, 209, 210, 211, or 212 or against the tax imposed pursuant to section 12-202a in an amount determined under the provisions of subsection (b) of this section with respect to the personal property taxes paid during any income year, on electronic data processing equipment. . . ." Subsection (b) of § 12-217t establishes the amount of the tax credit as the full amount of the personal property taxes paid on the subject equipment, and provides: "The amount allowed as a credit in any income year shall be the full amount of the tax on such electronic data processing equipment

paid pursuant to section 12-71 or 12-80a, and as defined under Section 168 of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, provided no credit shall be allowed for the payment of any interest or penalty on the tax." Linguistically, these two subsections place no limitation on who may acquire or use the tax credit because they are phrased in the passive voice, and do not specify who is entitled to the tax credit.

Subsection (c) of § 12-217t appears to limit acquisition and use of the tax credit to a "taxpayer"; see footnote 6 of this opinion; by dictating how the tax credit is to be used. "The credit provided for by this section shall be allowed for any taxes owed on the grand list of October 1, 1994, and each grand list annually thereafter or included in the list prescribed under section 12-80a for such grand list. Such credits shall first *be used by the taxpayer against the corporation business tax* under this chapter, if any, and then may be used *against any tax paid by the taxpayer* under the provisions of chapter 207, 208a, 209, 210, 211 or 212 or the tax imposed upon a health care center under section 12-202a. . . ." (Emphasis added.) General Statutes § 12-217t (c). Thus, although § 12-217t (a) may allow a tax credit when personal property taxes are paid on electronic data processing equipment, this language suggests that eligibility for the tax credit can be established only by a "taxpayer" who can use the credit in the manner prescribed.

Furthermore, § 12-217t (e), although not directly applicable in the present case, strongly suggests that the legislature anticipated that a "taxpayer" would pay the personal property taxes on the electronic data processing equipment and use the tax credit. Subsection (e) of § 12-217t provides in relevant part: "In the case of taxpayers filing a combined return pursuant to sec-

tion 12-223a, the credit provided by this section shall be allowed on a combined basis, such that the amount of personal property taxes *paid by such taxpayers* with respect to such equipment may be claimed as a tax credit against the combined tax liability *of such taxpayers* as determined under this chapter. . . ." (Emphasis added.) Thus, the text of the statute indicates that the legislature intended to grant eligibility for the § 12-217t tax credit to a "taxpayer" who has paid the personal property taxes on the electronic data processing equipment and who can use the tax credit against tax liabilities arising from the corporation business tax or other specific chapters of the tax code.

We next consider other sources of information that might provide evidence of the legislature's intent. A review of other statutes that provide tax credits, both in the corporation business tax chapter and in other chapters of the General Statutes, supports the conclusion that the legislature intended to grant eligibility for the § 12-217t tax credit to "taxpayers." See *State* v. *Reynolds*, 264 Conn. 1, 77–78, 836 A.2d 224 (2003) (statutes interpreted with regard to relevant statutes because legislature presumed to have created consistent body of law), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). Although several tax credit statutes in the corporation business tax chapter, like § 12-217t, grant eligibility to a "taxpayer," other tax credit statutes in the same chapter either restrict eligibility to a subset of the entities identified as "taxpayers," or expand eligibility to entities beyond those identified as "taxpayers." For instance, General Statutes §§ 12-217j, 12-217*l*, 12-217o, 12-217s and 12-217w restrict eligibility to corporations, a subset of the entities included in the definition of "taxpayer." Conversely, General Statutes §§ 12-217p (a) and 12-217y (a) (1) each grant a tax credit to a " 'business firm,' " which both statutes define as "any business entity authorized to do

business in this state and subject to the corporation business tax imposed under this chapter," a broader set of entities than that included in the definition of "taxpayer." General Statutes § 12-217u restricts eligibility to a " '[f]inancial institution' " as defined in the statute, and also redefines " '[c]ompany' " specifically to include a partnership as used in that statute.[15] Other tax statutes, not in the corporation business tax chapter, that provide tax credits define "taxpayer" to include partnerships. For instance, a " '[t]axpayer,' " defined as "any person, as defined in [General Statutes §] 12-1," is eligible for a tax credit that can be used against the corporation business tax under both General Statutes §§ 32-9t (a) (7) and 38a-88a (a) (9). The definition of " 'person' " in § 12-1 includes a partnership.

Where the legislature has taken action in an area, we generally interpret the legislature's failure to take similar action in a closely related area as indicative of a decision not to do so. See *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 135–36, 848 A.2d 451 (2004) (legislature's failure to grant municipality or town assessors discretionary authority concerning classification of property as forest land, as it did with classification of property as farmland and open space land, indicative that it did not intend to grant

---

[15] We do not mean to imply that the defendant's argument that § 12-217u grants express eligibility to partnerships is correct. Section 12-217u (a) (2) does modify the definition of " '[c]ompany' " from that provided in § 12-213 (a) (1) to include "any corporation, *partnership*, trust, association, unincorporated organization or similar organization . . . ." (Emphasis added.) Section 12-217u (b), however, grants the "credit against the tax imposed on a financial institution," not the tax imposed on a "company." The term "company" is used primarily in § 12-217u in connection with calculating the number of qualified employees, which may affect entitlement to the credit, but does not constitute an express grant of eligibility to partnerships. We refer to § 12-217u only as an example of a statute where the legislature has established eligibility by reference to a more limited group of entities than "taxpayers" and expressly has modified a term to include partnerships for use in an individual statute.

authority with respect to forest land). Thus, where the legislature has varied the eligibility for tax credits to be both broader and more restrictive than those entities identified in the § 12-213 (a) (1) definition of " 'taxpayer,' " its failure to do so in § 12-217t indicates an intent not to do so.

Furthermore, these examples demonstrate that the legislature routinely balances the perceived economic benefit of a tax credit against the potential revenue loss to the state by specifying who should be eligible for the credit, and is well equipped to indicate its intent through the use of terms explicitly defined for use in the particular statute. The legislature explicitly defined " '[t]axpayer' " in § 12-213 (a) (1) and " '[p]artnership' " in § 12-213 (a) (24) for use in part I of the corporation business tax chapter. It chose to confer eligibility for the § 12-217t tax credit on the former without conferring eligibility on the latter.

Thus, under the interpretation advocated by the defendant, Cellco cannot establish eligibility for the tax credit because it neither qualifies as a "taxpayer," as that term is used in § 12-217t, nor bears any tax liability under the corporation business tax that would allow it to use the credit in the manner prescribed by § 12-217t. As the payer of the property tax on the electronic data equipment, Cellco qualifies as a "taxpayer" as that term is generally understood.[16] This general understanding of the meaning of "taxpayer" does not control the term's usage in § 12-217t, however, because § 12-213, which contains legislative definitions expressly applicable to part I of the corporation business tax chapter, contains the statutory definition of the term. "[C]ourts are bound to accept the legislative definition of terms in a statute . . . ." (Citation omitted; internal quotation marks

---

[16] Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) defines a taxpayer as "one that pays or is liable for a tax."

omitted.) *Connecticut Light & Power Co.* v. *Texas-Ohio Power, Inc.*, 243 Conn. 635, 653, 708 A.2d 202 (1998). Section 12-213 (a) (1) defines both " '[t]axpayer' " and " 'company' " as "any corporation, foreign municipal electric utility . . . electric distribution company . . . electric supplier . . . generation entity or affiliate . . . joint stock company or association or any fiduciary thereof and any dissolved corporation which continues to conduct business but does not include a passive investment company or municipal utility . . . ." The absence of a partnership from the list of entities that the legislature has included in the definition of "taxpayer," along with Cellco's inability otherwise to satisfy the definition, prevents Cellco from being a "taxpayer" for purposes of § 12-217t.

Furthermore, Cellco has not used and, indeed, cannot use the tax credit against taxes paid under either the corporation business tax or other chapters specified in § 12-217t as required by the statute because, as a partnership, it has no income tax liability under those chapters. In the absence of such liability, no opportunity exists for Cellco to satisfy the statutory mandate that the tax credit "*shall first be used by the taxpayer against the corporation business tax* under this chapter, if any, and then may be used *against any tax paid by the taxpayer* under [other specific chapters of the tax code]. . . ." (Emphasis added.) General Statutes § 12-217t (c). In effect, the plaintiffs find themselves in a situation with respect to Cellco and the electronic data processing equipment tax credit directly analogous to that of the plaintiffs in *Caveney* v. *Bower*, 207 Ill. 2d 82, 797 N.E.2d 596 (2003), with respect to a subchapter S corporation and the research and development tax credit. See footnote 12 of this opinion. The plaintiffs cannot claim the credit because they did not incur the equipment property taxes, whereas Cellco cannot claim

the credit because it lacks the requisite income tax liability.

The plaintiffs concede that Cellco is not a " '[t]axpayer' " as defined in § 12-213 (a) (1), and that it has no income or corporate tax liability. They contend, however, that § 12-217t (a) and (b) are the operative provisions of the statute for determining eligibility for the tax credit, whereas the provisions of § 12-217t (c) are essentially ordering rules. Under the plaintiffs' theory, an entity becomes eligible for the § 12-217t tax credit upon payment of the municipal property tax on the equipment, regardless of its subsequent ability to use the credit. Thus, under this view, Cellco established eligibility for the tax credit by paying the municipal property tax.

This interpretation of the statute gains support in light of the legislative policy that § 12-217t was designed to implement and the statute's structure in relation to other tax credits in the corporation business tax chapter. The legislative history suggests that the legislature enacted the tax credit to spur economic development in Connecticut and enhance the probability of attracting and maintaining industries that rely on the use of electronic data processing equipment.[17] It is certainly plausi-

[17] "We are indeed cutting business taxes by about $60 million, most of it directed at property tax relief for data processing equipment. Here in the State of Connecticut, if we are truly interested in being the high technology state, if we're truly interested in economic development that relies on computers and technological development, we need to make sure that our tax policy represents that kind of direction and this tax cut of $60 million does that." 37 S. Proc., Pt. 9, May, 1994 Spec. Sess., pp. 3241–42, remarks of Senator James H. Maloney.

"[W]hen I take a look at some of these tax cuts, especially some of what would dollarwise be considered smaller ones . . . there was general bipartisan support that a case was made at the Finance Committee and they provided some economic stimulus to a particular industry. The data processing, for example, will hopefully work to save quite a few jobs and build an industry . . . ." 37 H.R. Proc., Pt. 24, May, 1994 Spec. Sess., pp. 8620–21, remarks of Representative Robert A. Maddox, Jr.

ble that granting the tax credit to partnerships would further the desired legislative policy. Cellco's eligibility for the tax credit would tend to influence it to keep the electronic data processing equipment, and the jobs associated with its operation, in this state, all other things being equal. Thus, the legislative purpose supports the plaintiffs' interpretation of the statute.

A comparison of the structure of § 12-217t to that of the other tax credits in the corporation business tax chapter also supports that eligibility. The corporation business tax chapter currently contains nineteen separate statutes that provide tax credits for various activities. Eighteen of those tax credit statutes use language similar to the § 12-217t (a) language to dictate the action necessary to generate the credit.[18] Each of these statutes contains one of the following phrases: "[t]here shall be allowed as a credit against the tax imposed";[19] "[t]here shall be allowed a credit against the tax imposed";[20] or "[t]here shall be allowed a credit for . . . ."[21] Fifteen of the statutes then proceed to limit eligibility for the specific tax credit either by identifying who may receive the tax credit,[22] or whom the corporation business tax must be imposed upon immediately following that phrase.[23] Subsection (a) of § 12-217t contains no such limiting language.

---

[18] The lone exception is General Statutes § 12-217y, which grants business firms a tax credit for hiring employees who have been receiving benefits from the temporary family assistance program for more than nine months and requires application to the labor commissioner to receive the tax credit.

[19] General Statutes §§ 12-217e (a) and (b), 12-217j (a), 12-217l, 12-217n (a), 12-217o, 12-217p (b), 12-217s, 12-217t (a), 12-217v (b) and 12-217cc (b).

[20] General Statutes §§ 12-217u (a) and (b) and 12-217bb (a).

[21] General Statutes §§ 12-217g (a), (b) and (c), 12-217i (a) and (b), 12-217w (b), 12-217x (b), 12-217dd (b) and 12-217ff (b).

[22] See, e.g., General Statutes § 12-217g (a) ("[t]here shall be allowed a credit for *any taxpayer*" [emphasis added]); General Statutes § 12-217i (a) (same); General Statutes § 12-217w (b) ("[t]here shall be allowed a credit for *any corporation*" [emphasis added]); General Statutes § 12-217x (b) (same).

[23] See, e.g., General Statutes § 12-217j (a) ("[t]here shall be allowed as a credit against the tax imposed *on any corporation* under this chapter" [emphasis added]); General Statutes § 12-217s (same); General Statutes § 12-

Although these factors support the plaintiffs' interpretation of the statute, they do not create the requisite level of certainty to establish that interpretation as definitive because, despite the fact that the plaintiffs present a persuasive interpretation of the statute, the defendant's interpretation is persuasive as well. Sufficient ambiguity exists in the language and the structure of the statute to admit either interpretation as persuasive. Hence, we return to the principle of statutory construction applicable to tax statutes set forth at the beginning of our statutory analysis, namely, that we strictly construe statutes that grant tax exemptions against the party claiming the exemption. See *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, supra, 262 Conn. 220. We have adopted this rule of construction because exemptions operate in a manner equivalent to an appropriation of public funds in that they shift the burden of taxation from the potential taxpayer to other taxpayers. Id. In order to prevail in light of this rule of construction, the plaintiffs must establish that § 12-217t clearly and unambiguously entitles them to the tax credit. *Golf Digest/Tennis, Inc.* v. *Dubno*, supra, 203 Conn. 465. Although the plaintiffs offer a persuasive interpretation of § 12-217t whereby Cellco would be eligible for the tax credit, they are unable to overcome the burden of establishing that the statute clearly and unambiguously entitles Cellco to the credit in the face of the defendant's interpretation, which is also persuasive.

The plaintiffs also argue that Cellco's payment of the municipal property tax is an act that can be attributed to the partners under the conduit treatment of partnership tax attributes. Under this theory, the partners are

217u (b) ("[t]here shall be allowed a credit against the tax imposed *on a financial institution*" [emphasis added]); General Statutes § 12-217bb (a) ("there shall be allowed a credit against the tax imposed under this chapter on *any electric supplier in the state other than a generation entity or affiliate of an electric company*" [emphasis added]).

treated as if they paid the property tax directly for purposes of the § 12-217t tax credit. Such treatment would entitle the plaintiffs to the use of the credit because they qualify as " '[t]axpayers' " pursuant to the statutory definition of the term, and they can use the credit in the manner prescribed by the statute. To determine if the plaintiffs can establish eligibility for the tax credit under this theory, we must first determine if the statutory scheme involved incorporates the conduit treatment of partnership tax attributes and, if it does, explore the contours of that treatment.

The plaintiffs advance two arguments for Connecticut's incorporation of the conduit treatment of partnership tax attributes into the corporation business tax: a general incorporation of federal tax principles into Connecticut's tax laws; and the specific incorporation of federal tax principles into the corporation business tax through the adoption, in that chapter, of the federal income tax definition of "gross income." For purposes of the corporation business tax, " '[g]ross income' means gross income, as defined in the Internal Revenue Code . . . ." General Statutes § 12-213 (a) (9) (A); see footnote 9 of this opinion. Although we disagree that our precedents denote the general incorporation of federal tax principles into our state tax statutes, we conclude that the corporation business tax does incorporate the federal conduit treatment of partnership tax attributes through the adoption of the federal income tax definition of "gross income."

We reach both of these conclusions on the basis of our well established approach to determining whether state law incorporates federal tax principles. "We long have held that when our tax statutes refer to the federal tax code, federal tax concepts are incorporated into state law. . . . Although this rule does not require the wholesale incorporation of the entire body of federal tax principles into our state income tax scheme, where

a reference to the federal tax code expressly is made in the language of a statute, and where incorporation of federal tax principles makes sense in light of the statutory language at issue, our prior cases uniformly have held that incorporation should take place." (Citations omitted; internal quotation marks omitted.) *Berkley* v. *Gavin*, 253 Conn. 761, 773, 756 A.2d 248 (2000). Thus, no general incorporation of federal tax principles into our state tax law takes place; incorporation requires an express reference to the federal tax code and is limited to the principles associated with that reference. The corporation business tax reference to the Internal Revenue Code definition of "gross income" satisfies the requirement for an express reference. Accordingly, the corporation business tax incorporates the federal income tax concept of "gross income."

That concept of "gross income," in turn, incorporates the conduit treatment of partnership tax attributes. In the Internal Revenue Code, "gross income" includes income derived from a "[d]istributive share of partnership gross income . . . ." 26 U.S.C. § 61 (a) (13). Section 702 (c) of the Internal Revenue Code further specifies that "[i]n any case where it is necessary to determine the gross income of a partner for purposes of this title, such amount shall include his distributive share of the gross income of the partnership." 26 U.S.C. § 702 (c). Consequently, in a partnership situation, the character of those items constituting a partner's distributive share of the partnership's gross income provides essential context to the concept of a partner's gross income. Section 702 (b) of the Internal Revenue Code provides that "[t]he character of any item of income, gain, loss, deduction, or credit included in a partner's distributive share . . . shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership." 26 U.S.C. § 702

(b). This provision results in the conduit treatment of partnership tax attributes in the federal tax code. See *United States* v. *Basye*, 410 U.S. 441, 448 n.8, 93 S. Ct. 1080, 35 L. Ed. 2d 412 (1973) ("[t]he legislative history indicates, and the commentators agree, that partnerships . . . are conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares"); *Rath* v. *Commissioner of Internal Revenue*, 101 T.C. 196, 203 (1993) ("[i]t is well settled that [Internal Revenue Code §] 702 [b] reflects a 'conduit' approach whereby the character of an item of income, gain, loss, deduction, or credit is determined at the entity or partnership level before the item is passed through to the partners"). Thus, the incorporation of the federal conduit treatment of partnership tax attributes necessarily follows from the conclusion that the corporation business tax incorporates the federal income tax concept of "gross income."

This treatment of partnership tax attributes agrees not only with the federal approach but with the approach of most other states. "Most states follow the basic federal tax structure governing income taxation of partners and partnerships. Under the federal rules, partnerships are treated as conduits and are not themselves subject to tax, but partners are directly taxable with respect to their distributive shares of partnership items of income, gain, loss, deduction, and credit. As under federal law, partnership items normally retain their character when passed through to the partners as though realized directly by the partners from their source." II J. Hellerstein & W. Hellerstein, State Taxation (3d Ed. 2003) § 20.08, p. 20-134.

The defendant contends that the legislature's reference to the Internal Revenue Code definition of "gross income" is irrelevant to the question of whether a partnership can pass a § 12-217t tax credit through to its partners because § 12-217t does not refer to "gross

income," and that the statute requires an explicit conduit provision, which does not exist, to allow such a pass through. The defendant emphasizes that we incorporate federal tax principles *"where a reference to the federal tax code expressly is made in the language of a statute . . . ."* (Emphasis added.) *Berkley* v. *Gavin,* supra, 253 Conn. 773. The defendant reads the application of this case law too narrowly. Section 12-213 (a) (9) (A), which contains the definition of " '[g]ross income,' " applies to all of the statutes in part I of the corporation business tax.

Establishing that corporation business tax attributes pass through the partnership to the partners with the same character that they had at the partnership level, however, does not suffice to establish that Cellco's payment of the municipal property tax resulted in a credit that can be attributed to the partners. Under the conduit approach, "the character of [the tax attribute] is determined *at the entity or partnership level* before the item is passed through to the partners." (Emphasis added.) *Rath* v. *Commissioner of Internal Revenue,* supra, 101 T.C. 203. In the present case, Cellco's payment of the municipal property tax was just that, a payment, not a tax credit. Not every action taken by the partnership passes through to the partners as if they performed the act. Section 702 (b) of the Internal Revenue Code provides that "[t]he character of any item of *income, gain, loss, deduction, or credit* included in a partner's distributive share . . . shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership." (Emphasis added.) 26 U.S.C. § 702 (b). This provision does pass credits through a partnership to its partners. It does not, however, create credits. Cellco's payment of the municipal property tax could result in it having a credit only by virtue of state law. In the present case, Cellco's

payment of the municipal property tax did not result in a tax credit because, under the Connecticut tax statute, it cannot be said that Cellco was plainly and unambiguously eligible to receive such a credit.

Finally, the plaintiffs argue that an interpretation of § 12-217t that does not permit the partners to use the tax credit leads to an absurd result because it denies two corporations acting through a partnership a benefit that each party could obtain if it acted on its own. All parties agree that, had the plaintiffs operated as thirteen separate corporations, instead of through a partnership, and had those corporations collectively paid the same taxes on the same equipment, each corporation would fall within the definition of "taxpayer" and would be able to use the associated tax credit to offset its tax liability under the corporation business tax, as the plaintiffs seek to do in the present case. The plaintiffs, however, chose to operate through a partnership, not as separate corporations. Sophisticated business entities recognize selection of a business form as a critical decision that carries with it certain legal consequences, including tax implications. The legislature's decision to grant a tax credit to certain business forms while denying it to others does not constitute an absurd result. The fairness of such decisions remains within the prerogative of the legislature, not of this court. See *Yaeger v. Dubno*, 188 Conn. 206, 213, 449 A.2d 144 (1982).

The judgment is reversed and the case is remanded to the trial court with direction to render judgment dismissing the plaintiffs' appeal.

In this opinion the other justices concurred.