## LOMBARDO'S RAVIOLI KITCHEN, INC. *v.* MARC S. RYAN, SECRETARY, OFFICE OF POLICY AND MANAGEMENT, ET AL.
### (SC 17017)
### (SC 17018)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 6—officially released March 23, 2004

*Jeffrey J. Mirman,* for the appellant (plaintiff).

*Maureen Regula,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Jonathon L. Ensign,* assistant attorney general, for the appellees (defendants).

*Opinion*

KATZ, J. The principal issue in these consolidated appeals[1] is whether a property tax exemption provided

---

[1] These cases were tried together before *Hon. Arnold W. Aronson,* judge trial referee, who, exercising the powers of the Superior Court, rendered separate judgments dismissing the appeals. The plaintiff filed a separate appeal from those judgments to the Appellate Court. The Appellate Court, sua sponte, ordered that the two appeals be consolidated for purposes of argument and preparation of the record only. Thereafter, we transferred

by General Statutes (Rev. to 1997) § 12-81 (72)[2] properly

the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes (Rev. to 1997) § 12-81 provides in relevant part: "The following-described property shall be exempt from taxation . . .

"(72) . . . (b) Any person who on October first in any year holds title to machinery and equipment for which he desires to claim the exemption provided in this subdivision shall file with the assessor or board of assessors in the municipality in which the machinery or equipment is located, on or before the first day of November in such year, a list of such machinery or equipment together with written application claiming such exemption on a form prescribed by the Secretary of the Office of Policy and Management. Such application shall include the taxpayer identification number assigned to the claimant by the Commissioner of Revenue Services and the federal employer identification number assigned to the claimant by the Secretary of the Treasury. If title to such equipment is held by a person other than the person claiming the exemption, the claimant shall include on his application information as to the portion of the total acquisition cost incurred by him, and on or before the first day of November in such year, the person holding title to such machinery and equipment shall file a list of such machinery with the assessor of the municipality in which the manufacturing facility of the claimant is located. Such person shall include on the list information as to the portion of the total acquisition cost incurred by him. Commercial or financial information in any application or list filed under this section shall not be open for public inspection, provided such information is given in confidence and is not available to the public from any other source. The provisions of this subdivision regarding the filing of lists and information shall not supersede the requirements to file tax lists under sections 12-42, 12-43, 12-57a and 12-59. In substantiation of such claim, the claimant and the person holding title to machinery and equipment for which exemption is claimed shall present to the assessor or board of assessors such supporting documentation as said secretary may require, including, but not limited to, invoices, bills of sale, contracts for lease and bills of lading. Failure to file such application in this manner and form within the time limit prescribed shall constitute a waiver of the right to such exemption for such assessment year, unless an extension of time is allowed by the Secretary of the Office of Policy and Management as set forth in section 12-81k and upon payment of the required fee for late filing. If title to exempt machinery is conveyed subsequent to October first in any assessment year, entitlement to such exemption shall terminate for the next assessment year and there shall be no pro rata application of the exemption unless such machinery or equipment continues to be leased by the manufacturer who claimed and was approved for the exemption in the previous assessment year. Machinery or equipment that was exempt under this subdivision for a five-year term or a portion thereof shall not be eligible for exemption upon transfer to a business organization related to or affiliated with the seller . . . . "

was denied to a corporate taxpayer purchasing machinery and equipment based upon a determination that the transfer of that property had been between "a business organization related to or affiliated with the seller," thus making the property ineligible for the exemption. The trial court determined that, because 100 percent of the seller corporation and 55 percent of the purchaser corporation were owned by the same individual, the exemption properly had been denied. We agree.

The record discloses the following undisputed facts. On August 19, 1996, Lombardo's Ravioli, Inc., a New Jersey corporation, whose stock was owned entirely by Frank Scoleri, sold its manufacturing machinery and equipment located in New Britain, Connecticut, to the plaintiff, Lombardo's Ravioli Kitchen, Inc., whose stock was owned by Frank Scoleri (55 percent), Carmine Scoleri (5 percent), Rosemary Scoleri (5 percent) and John Moreschi, Fred Moreschi and Glenn Moreschi (35 percent). Following that transaction, the plaintiff filed with the New Britain assessor claims for exemption pursuant to § 12-81 (72) (B) from the payment of personal property taxes on the newly acquired machinery and equipment for the years 1997 and 1998. In February of 2000, the plaintiff was notified that its claims for exemptions for the 1997 and 1998 assessment years had been modified by the defendants, Marc S. Ryan, the secretary of the office of policy and management, and the office of policy and management itself,[3] and in June of that year, the plaintiff was informed that the machinery and equipment did not qualify for the exemption for those years

All references herein to § 12-81 (72) are to the 1997 revision. We also note that in 1997, in addition to other changes, a technical change was made to § 12-81 (72) that changed the subparagraph references to upper case letters. See Public Acts 1997, No. 97-193, § 1. Consistent with that change and the current codification of the statute, for purposes of clarity, we refer herein to § 12-81 (72) (B).

[3] Because the defendants in these appeals share the same legal position, for convenience, we refer to both of them as the defendant.

because there was a common ownership of the New Jersey and Connecticut corporations.

Pursuant to General Statutes (Rev. to 1999) § 12-94b (b) (2),[4] the plaintiff challenged the denial of the exemption claim for the 1997 assessment year and requested a hearing concerning the exemption. Following a hearing before Michael J. Cicchetti, the under secretary of the intergovernmental policy division of the office of policy and management, the decision denying the exemption was upheld on the ground that the plaintiff's machinery and equipment were not newly acquired because the property had been "transfer[red] to a business organization related to or affiliated with the seller" pursuant to § 12-81 (72) (B). Cicchetti also upheld the denial of the plaintiff's claim for exemption for the 1998 assessment year. The plaintiff appealed both decisions to the Superior Court claiming that the defendant had not promulgated any regulations, as required by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., defining what is meant by a "business organization related to or affiliated with the seller," and that, by not providing a legal standard by which a business organization would be considered a "related" or an "affiliated" entity, the plaintiff could not know what level of common stock ownership would permit a corporation to qualify for the exemption upon acquisition of machinery and equipment from another company. According to the plaintiff, the defendant relied

---

[4] General Statutes (Rev. to 1999) § 12-94b (b) (2) provides in relevant part: "Any person aggrieved by the modification or denial of an exemption under subdivision (72) or (74) of section 12-81 by the Secretary of the Office of Policy and Management may, not later than one month after receiving the secretary's notice of such modification or denial thereto, make application for a hearing before said secretary, or his designee. Such application shall be in writing and shall set forth the reasons why the exemption in question should not be modified or denied. The secretary shall grant or deny such hearing request by written notice to the applicant. . . ."

All references herein to § 12-94 (b) (2) are to the 1999 revision.

on guidelines issued by the defendant, effective for the October 1, 1999 grand list, which had not been adopted in accordance with the UAPA, and the defendant's failure to adopt a standard for determining whether two business entities are affiliated resulted in an arbitrary and unlawful application of § 12-81 (72) (B).

The defendant thereafter moved for summary judgment, claiming that, because the plaintiff was related to or affiliated with Lombardo's Ravioli, Inc., it therefore was not entitled to the exemption under § 12-81 (72) (B). The plaintiff argued in response that, by not providing a legal standard by which a business organization would be considered a related or affiliated entity, the defendant's denials of the exemptions for 1997 and 1998 were improper. Additionally, the plaintiff claimed that the defendant was estopped from denying the exemptions because it had not opposed the plaintiff's exemption for the 1996 assessment year and the plaintiff was thereby led to believe that the property would qualify for the exemption.

The trial court first determined that, because § 12-94b (a) authorizes the defendant to review the property tax exemptions claimed under § 12-81 (72) annually and to exclude such property that does not qualify,[5] the

---

[5] General Statutes (Rev. to 1999) § 12-94b (a) provides in relevant part: "On or before March fifteenth, annually . . . the assessor or board of assessors of each municipality shall certify to the Secretary of the Office of Policy and Management, on a form furnished by said secretary, the amount of exemptions approved under the provisions of subdivisions (72) and (74) of section 12-81, together with such supporting information as said secretary may require including the number of claimants so approved and the original copy of the claims filed by them. . . . Said secretary shall review each such claim and modify the value of any property included therein when, in his judgment, the value is inaccurate or exclude any property when, in his judgment, it does not qualify pursuant to subdivision (72) or (74) of section 12-81. . . . [T]he secretary shall notify each claimant and assessor or assessors of the modification or denial of his exemption . . . . The secretary shall, on or before December fifteenth, annually, certify to the Comptroller the amount due each municipality under the provisions of this section . . . ."

plaintiff's claim that its exemption in 1996[6] estopped the defendant from fulfilling its statutory mandate in 1997 and 1998 must fail because it would prevent the defendant from fulfilling its function. The trial court then determined that the defendant properly applied a common understanding of the terms "related to" and "affiliated with" to conclude that, because Frank Scoleri was a majority shareholder of both the seller and the buyer of the machinery and equipment, the corporations were affiliated and related to one another and therefore the plaintiff was disqualified from receiving the tax exemption under § 12-81 (72).

Finally, the trial court examined an amendment to § 12-81 (72) (B) that was enacted while the plaintiff's appeals were pending, which amendment changed the reference to a transfer from a "business organization related to or affiliated with the seller" to a transfer from "a seller to a related business" and defined "related business" as a "corporation . . . that is in control of the taxpayer," with control meaning "ownership, directly or indirectly, of stock possessing fifty per cent or more of the total combined voting power of all classes of the stock . . . ." Public Acts, Spec. Sess., June, 2001, No. 01-6, § 83.[7] The court rejected the plain-

[6] The defendant maintains that, in resolving the plaintiff's claim of estoppel, the trial court improperly found that "[w]hen the plaintiff purchased the machinery and equipment at issue from Lombardo's Ravioli, Inc., the New Jersey corporation, on August 19, 1996, the plaintiff claimed an exemption from the payment of personal property taxes for newly acquired equipment. The New Britain assessor granted, and the plaintiff received, an exemption from personal property taxes for the 1996 assessment year." According to the defendant, this finding is unsupported in the record. We agree and therefore reject the plaintiff's claim of estoppel. See part II of this opinion.

[7] The amendment provides in relevant part: "For the purposes of this subdivision, 'related business' means: (i) A corporation, limited liability company, partnership, association or trust controlled by the taxpayer; (ii) an individual, corporation, limited liability company, partnership, association or trust that is in control of the taxpayer; (iii) a corporation, limited liability company, partnership, association or trust controlled by an individual, corporation, limited liability company, partnership, association or trust that is in

tiff's claim that the amendment was new legislation that should have no retroactive effect on its 1997 and 1998 claims for exemption. Rather, the trial court considered the amendment to be a clarification, consistent with this court's determination in *Yanow* v. *Teal Industries, Inc.*, 178 Conn. 262, 283, 422 A.2d 311 (1979), that "control of a corporation exists when one holds a majority of the shares of the corporation" and, therefore, the court determined that the amendment was supportive of the defendant's interpretation of § 12-81 (72) (B). Accordingly, the court granted the defendant's motions for summary judgment and dismissed both appeals. These appeals followed.

I

The plaintiff claims that the trial court improperly determined that the defendant's construction of § 12-81 (72) (B) was correct. Specifically, the plaintiff asserts that the defendant improperly relied on a set of guidelines that had not been adopted in accordance with the statutory procedure for the adoption of regulations. According to the plaintiff, the defendant adopted a substantive rule or regulation without following the statutory procedure for adoption of regulations pursuant to the UAPA. See General Statutes § 4-168. The plaintiff also claims that the defendant improperly failed to pro-

control of the taxpayer; or (iv) a member of the same controlled group as the taxpayer. For purposes of this subdivision, 'control', with respect to a corporation, means ownership, directly or indirectly, of stock possessing fifty per cent or more of the total combined voting power of all classes of the stock of such corporation entitled to vote. 'Control', with respect to a trust, means ownership, directly or indirectly, of fifty per cent or more of the beneficial interest in the principal or income of such trust. The ownership of stock in a corporation, of a capital or profits interest in a partnership or association or of a beneficial interest in a trust shall be determined in accordance with the rules for constructive ownership of stock provided in Section 267(c) of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, other than paragraph (3) of said Section 267(c)." Spec. Sess. P.A. 01-6, § 83.

vide a standard by which a business organization could know what level of common stock ownership would permit it to qualify for an exemption upon its acquisition of machinery and equipment from another company. Finally, the plaintiff claims that the amendment to § 12-81 (72) (B), providing a definition of "related business" that would include the transaction at issue in the present case, was a substantive change that could not be applied retroactively.

In response, the defendant asserts that the trial court properly interpreted § 12-81 (72) (B) and that Frank Scoleri's ownership of 100 percent of the seller corporation and 55 percent of the purchasing corporation made the organizations "related to or affiliated with" each other under the statute. The defendant relies on the trial court's determinations that "[t]he plaintiff does not qualify for the exemption under § 12-81 (72) (B) as it was worded at the time of the transfer or after it was amended by Spec. Sess. P.A. 01-6, § 83." We agree with the defendant that the trial court correctly rejected the plaintiff's claim that the defendant had violated the UAPA when it properly interpreted the term "related to or affiliated with" as used in § 12-81 (72) (B).

Our determination is guided by several well settled principles. "Issues of statutory construction raise questions of law, over which we exercise plenary review." *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 588, 830 A.2d 164 (2003). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement,

and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Bender* v. *Bender*, 258 Conn. 733, 741, 785 A.2d 197 (2001). We note that our legislature recently has enacted the method of interpretation by which this court is to interpret statutes when the text is plain and unambiguous.[8] Because the parties in the present case do not claim that the relevant statutory text, along with the relationship of that text to other statutes, is plain and unambiguous, our analysis is not limited by this new legislation.

We also note that, because we are dealing with an issue of tax exemption, we are guided by additional specific standards. "The general rule of construction in taxation cases is that provisions granting a tax exemption are to be construed strictly against the party claiming the exemption. . . . Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms. . . . [Moreover] [w]e strictly construe such statutory exemptions because [e]xemption from taxation is the equivalent of an appropriation of public funds, because the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of [other taxpayers]. . . . The owners of tax-exempt property in the community derive the same benefits from government as other property owners but pay no property taxes for those benefits." (Citations omitted; internal quotation marks omitted.) *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, 262 Conn. 213,

---

[8] Specifically, the legislature enacted Public Acts 2003, No. 03-154, § 1, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

220, 811 A.2d 1277 (2002). With these principles in mind, we turn to the merits of the plaintiff's claim.[9]

As with any issue of statutory construction, we begin with the pertinent language of the statute. At the time of the plaintiff's applications, the statutory language provided in relevant part that "[m]achinery or equipment that was exempt under this subdivision for a five-year term or a portion thereof shall not be eligible for exemption upon transfer to a business organization related to or affiliated with the seller . . . ." General Statutes (Rev. to 1997) § 12-81 (72) (b); see footnote 2 of this opinion. In the absence of a statutory definition of the meaning of "related to" or "affiliated with," we look to the common understanding of these words and their dictionary definitions. *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 33, 699 A.2d 101 (1997); *Doe* v. *Manson*, 183 Conn. 183, 186, 438 A.2d 859 (1981); *Ziperstein* v. *Tax Commissioner*, 178 Conn. 493, 500, 423 A.2d 129 (1979); 2A J. Sutherland, Statutory Construction (6th Ed. Singer 2000) § 47.07, p. 235; General Statutes § 1-1 (a) ("words and phrases shall be construed according to the commonly approved usage of the language").

The most apt dictionary definitions of the relevant words, as used in the context of this statute, are as follows. Webster's Third New International Dictionary defines "affiliate" as "a company effectively controlled by another or associated with others under common ownership or control . . . ." Black's Law Dictionary (7th Ed. 1999) defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings

---

[9] Initially, we note that, contrary to the plaintiff's assertion that the defendant improperly relied upon guidelines that were not adopted in accordance with the UAPA to conclude that the plaintiff was not eligible for an exemption, our review of the guidelines uncovers nothing that speaks directly or indirectly to the issue of what is to be considered a "related business," nor does the plaintiff draw our attention to any such section.

or other means of control; a subsidiary, parent, or sibling corporation." "Control" as a noun is defined as "[t]he direct or indirect power to direct the management and policies of a person or entity, whether through ownership of voting securities, by contract, or otherwise; the power or authority to manage, direct, or oversee . . . ." Id. As a verb, control is defined as "[t]o have a controlling interest in . . . ." Id. These definitions are consistent with how this court has construed corporate control. See *Yanow* v. *Teal Industries, Inc.*, supra, 178 Conn. 283 (corporate majority shareholder of corporation has right to control). Finally, "related" is defined as "having relationship: connected by reason of an established or discoverable relation . . . ." Webster's Third New International Dictionary.

The common meaning of these terms clearly falls within the meaning applied by the defendant and construed by the trial court. Frank Scoleri owned 100 percent of the selling corporation and 55 percent of the purchasing corporation. Therefore, he had control over both companies. As a matter of common sense and common meaning, this common ownership of the majority of stock in both companies made the sale of the machinery ineligible for the exemption as a "transfer to a business organization related to or affiliated with the seller" under § 12-81 (72) (B). Therefore, the trial court properly concluded that in deciding this case, the defendant merely was fulfilling its statutory obligation under § 12-94b (a) to review property tax exemption claims under § 12-81 (72) (B) annually and to interpret and apply § 12-81 (72) (B) to the plaintiff's situation. See *Sweetman* v. *State Elections Enforcement Commission.*, 249 Conn. 296, 317, 732 A.2d 144 (1999) ("administrative agencies must necessarily interpret statutes which are made for their guidance and they may do so without reference to regulations" [internal quotation marks omitted]). "To rule otherwise would

be to ignore the subtle and intricate interaction of law and fact. It is inherent in our judicial system of dispute resolution that the interpretation of statutes, like the development of the common law, grows out of the filtering of a set of facts through the law, as seen by the administrator or judge. The result of this application is a hybrid, composed in part of fact, in part of law, which by its existence contributes to the interpretation of a statute." *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson*, 173 Conn. 352, 356–57, 377 A.2d 1099 (1977).[10]

## II

We next address the plaintiff's claim that the defendant should be estopped from denying the property tax exemption for 1997 and 1998 because the plaintiff had received the exemption provided for in § 12-81 (72) in 1996. The following additional facts are pertinent to this claim.

In its administrative appeal, the plaintiff alleged that on August 19, 1996, it had "acquired the property and equipment [that] are the subject of this appeal from Lombardo's Ravioli, Inc., a New Jersey corporation," and had "received the exemption provided for in . . . § 12-81 (72) for the 1996 assessment year." In connection with its motions for summary judgment, the defendant submitted an affidavit of Sandra M. Huber, a planning specialist employed by the defendant who was responsible for administering the program charged with reviewing the claims for tax exemption for new or newly-acquired manufacturing machinery and equipment. Pursuant to a request by the defendant, Huber

---

[10] Because we conclude that the trial court properly defined "related to" and "affiliated with" by applying the common understanding of the meaning of words and phrases in deciding that the defendant's denial of the plaintiff's exemptions was correct, we need not address the plaintiff's claim that the trial court improperly retroactively applied legislation that was substantive in nature; Spec. Sess. P.A. 01-6; to increase its statutory liability.

examined the defendant's records pertaining to its 1996 filings and found that no claims for a property tax exemption had been made by the plaintiff for the year 1996 and that, in the absence of a claim, the plaintiff did not qualify for a tax exemption. Additionally, Huber stated in her affidavit that her responsibilities included reviewing and responding to all written correspondence as well as all verbal, telephone and e-mail inquiries regarding the applicability of the property tax exemption for manufacturing machinery and equipment, and that she had conducted a review of all such communication relating to the applicability of the exemption and found no inquiries from any persons in connection with the machinery at issue in the present case prior to 1999. The plaintiff presented no affidavits stating that it had claimed a property tax exemption for 1996, that the New Britain assessor had granted the exemption or that the plaintiff had received the exemption for 1996. Therefore, the only facts before the trial court were that the defendant had no record of receipt of any claim for a property tax exemption or any inquiry regarding such an exemption for any year prior to 1997.

We recently had the opportunity to discuss the doctrine of equitable estoppel and the associated burdens of proof. "The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there *is* evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. . . . Accordingly, we will reverse the trial

court's legal conclusions regarding estoppel only if they involve an erroneous application of the law. . . .

"Strong public policies have long formed the basis of the doctrine of equitable estoppel. The office of an equitable estoppel is to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties. . . . No one is ever estopped from asserting what would otherwise be his right, unless to allow its assertion would enable him to do a wrong. . . .

"There are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." (Citations omitted; emphasis in original; internal quotation marks omitted.) *W.* v. *W.*, 256 Conn. 657, 660–62, 779 A.2d 716 (2001).

In the present case, the trial court granted the defendant's motions for summary judgment, rejecting the plaintiff's claim of estoppel based upon its conclusion that, when it denied the plaintiff's application for an exemption, the defendant was acting as a public agency in the performance of its governmental function. *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 146, 527 A.2d 679 (1987) ("as a general rule, estoppel may not be invoked against a public agency in the exercise of its governmental functions"). The trial court did not make any findings regarding reliance by the plaintiff.[11] The

---

[11] The defendant raises the alternate ground for affirmance that the plaintiff could not prevail on its claim of estoppel because there was no evidence that the plaintiff relied to its detriment on any conduct by the defendant.

only pertinent factual statement in connection to the estoppel claim is the trial court's improper finding that "[w]hen the plaintiff purchased the machinery and equipment at issue from Lombardo's Ravioli, Inc., the New Jersey corporation, on August 19, 1996, the plaintiff claimed an exemption from the payment of personal property taxes for newly acquired equipment. The New Britain assessor granted, and the plaintiff received, an exemption from personal property taxes for the 1996 assessment year." See footnote 6 of this opinion.

Our standards governing our review of a trial court's decision to grant a motion for summary judgment are well settled. "Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381 [now § 17-46]. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994)." (Internal quotation marks omitted.) *Hertz Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 380–81, 713 A.2d 820 (1998).

The plaintiff's reliance on equitable estoppel as a basis for challenging the trial court's grant of summary

judgment is misplaced.[12] First, as the defendant points out, there was no support for the trial court's finding that the plaintiff had applied for, had qualified for, or had been granted or denied a property tax exemption for 1996. Although we view the evidence in the light most favorable to the nonmoving party, the plaintiff's failure to oppose the Huber affidavit, pursuant to Practice Book § 17-45,[13] is fatal. Second, equitable estoppel is concerned with actions by one party that induce a faulty reliance by the other party. *Celentano* v. *Oaks Condominium Assn.*, supra, 265 Conn. 614–15. There is nothing in the record to indicate that the defendant misled the plaintiff or behaved in a manner that would have encouraged the plaintiff to rely to its detriment on the defendant's actions or words.[14] Nor is there any

[12] As we have stated, the trial court rejected the plaintiff's claim of estoppel based upon its determination that estoppel could not be invoked in this case because the defendant was a public agency merely exercising its governmental functions. Our resolution of the plaintiff's claim on the alternate grounds for affirmance raised by the defendant is not a repudiation of the trial court's determination. Rather than engage in a lengthy discussion of the law involving governmental agencies and discretionary activities, we affirm the trial court's rejection of the plaintiff's estoppel claim based on the lack of any supporting evidence necessary as a factual predicate. See *State* v. *DeLoreto*, 265 Conn. 145, 153, 827 A.2d 671 (2003) ("[w]here the trial court reaches a correct decision but on [mistaken] grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it" [internal quotation marks omitted]).

[13] Practice Book § 17-45 provides in relevant part: "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . . The adverse party shall at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence. . . ."

[14] In support of its estoppel claim, the plaintiff argues that, in the absence of any definition of a "related" or "affiliated" business for purposes of § 12-81 (72) (B), it properly relied on the definition of affiliated business entities contained in General Statutes § 12-412 (62), which would not include the plaintiff and Lombardo's Ravioli, Inc. Our review of § 12-412 (62), however, reveals that its subject matter—sales and use tax liability for services rendered between parent companies and wholly owned subsidiaries—is wholly irrelevant to the issue of whether the plaintiff would qualify for an exemption

evidence that the plaintiff changed its position in reliance on any action by the taxing authority or the defendant. As we have stated, Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, we conclude that the trial court properly rejected the plaintiff's theory of estoppel.

The judgments are affirmed.

In this opinion the other justices concurred.

on newly acquired manufacturing machinery and equipment it purchased from Lombardo's Ravioli, Inc.