SCHOOL ADMINISTRATORS OF WATERBURY *v.*
WATERBURY FINANCIAL PLANNING AND
ASSISTANCE BOARD ET AL.
(SC 17304)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued September 23—officially released December 6, 2005

*John M. Gesmonde*, for the appellant (plaintiff).

*Linda L. Morkan*, with whom was *Richard F. Vitarelli*, for the appellee (named defendant).

*Opinion*

BORDEN, J. This appeal involves the intersection of No. 01-1 of the 2001 Special Acts (S.A. 01-1), which was enacted in order to address the fiscal crisis of the city of Waterbury (city), and the Teacher Negotiation Act (teacher act), General Statutes §§ 10-153a through 10-153o, which governs collective bargaining between local or regional boards of education and teachers and school administrators. The plaintiff, School Administrators of Waterbury, appeals from the judgment of the trial court dismissing, for lack of subject matter jurisdiction,[1] the plaintiff's action seeking to enjoin the implementation of a binding interest arbitration decision and award (award) issued by the named defendant, the Waterbury financial planning and assistance board (oversight board).[2] The trial court dismissed this action because the plaintiff had not timely filed a motion to vacate the award as is required under General Statutes § 10-153f (c) (8) of the teacher act. The plaintiff claims that the court improperly dismissed its action because the award of the oversight board that is at issue was not final and, therefore, the plaintiff could not file a motion to vacate it. Specifically, the plaintiff contends that the

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The other defendant is the board of education of the city of Waterbury, which has not filed a brief in this court but which, throughout the litigation, has adopted the position and arguments of the oversight board. References to the oversight board and to the board of education collectively are to the defendants.

award was not final because it never had been presented to the board of alderman of the city of Waterbury (board of alderman) for its review and possible rejection, and the award was not sufficiently specific to satisfy the finality requirement of § 10-153f (c) (8). We disagree and, accordingly, we affirm the judgment of the trial court.

The oversight board issued the award regarding a wage reopener in a collective bargaining agreement between the plaintiff and the defendant board of education of the city of Waterbury (board of education). The plaintiff brought this action for injunctive relief against the defendants. The defendants moved to dismiss the action for lack of subject matter jurisdiction. The trial court granted the motion and rendered judgment dismissing the action. This appeal followed.

The facts and procedural history are not disputed. The plaintiff is an employee organization designated pursuant to S.A. 01-1 as the exclusive representative of school administrators, principals and supervisors employed by the board of education. The oversight board is a state agency specially created pursuant to § 10 of S.A. 01-1.

As a result of a prior award of the oversight board dated November 27, 2002, the plaintiff and the board of education are parties to a collective bargaining agreement for the period from July 1, 2003 through June 30, 2006.[3] In that award, the oversight board set a salary

---

[3] Pursuant to § 11 (a) (5) of S.A. 01-1, the oversight board serves as "the binding arbitration panel" with respect "to labor contracts in or subject to binding arbitration . . . ." Presumably, this 2002 collective bargaining agreement was issued by the oversight board pursuant to § 11 (a) (5), and also pursuant to § 11 (a) (4) (A) of S.A. 01-1, which gives it the power, with respect to "collective bargaining agreements for a new term," to "set forth the terms of the agreement, which shall be binding upon the parties." The 2002 decision of the oversight board stated that the "dispute concerns the terms for a successor collective bargaining agreement (new Contract) between" the plaintiff and the board of education.

schedule and the terms of step advancement for the 2003–2004 school year, but left the terms of salaries and step advancements for the school years 2004–2005 and 2005–2006 to "a contract reopener for which negotiations shall commence in the Fall of 2003 pursuant to the [teacher act] and [S.A.] 01-1." Thus, appendices A-2 and A-3 of the award, indicating the salary schedules for the 2004–2005 and 2005–2006 school years, left the salaries blank for the various positions, divided them into seven steps, namely, a start step, and steps 1, 2, 3, 4, 4a and 5, and noted that the salary schedules and step movements for those years "will be the subject of a contract reopener for which negotiations shall commence in the fall of 2003 pursuant to the [teacher act] and [S.A.] 01-1."

On December 10, 2003, the parties appeared before the oversight board, acting in its continuing capacity as the binding arbitration panel for purposes of the teacher act, in order to resolve the wage reopener for the current collective bargaining agreement between the plaintiff and the board of education "concerning administrator salaries in school years 2004–2005 and 2005–2006." On December 31, 2003, after a full hearing, the oversight board rejected the last best offers of the parties and issued its award. The oversight board first discussed in great detail the statutory factors that it was required to consider pursuant to both S.A. 01-1 and the teacher act, namely, the public interest and the city's ability to pay.[4] It also noted that, pursuant to its

---

[4] In connection with this point, the oversight board noted that "the two are inextricably linked." Noting that the city "remains in a distressed and fragile financial condition," the oversight board discussed the following areas as indications and causes of that distress: cost of deficit bonds; insufficient reserves; high tax burden and increasing costs; unfunded pension liability; lack of access to capital markets; capital needs; the demographics of the city as one of the state's poorest municipalities; and a very high mill rate compared to other municipalities in the state.

powers under S.A. 01-1, it rejected the last best offers of both the plaintiff and the board of education.

The oversight board then addressed the first of the issues that had been left for the reopener, namely, the salary schedule and terms of step advancement for the 2004–2005 school year. With respect to this issue, the oversight board set the salary schedule for the various positions, but eliminated the start step. Thus, the oversight board made its award as follows: "In 2004–2005, the Start Step of the salary schedule shall be eliminated and administrators on former Start Step shall be compensated and placed on Step 1. All other administrators shall remain at their current step. There shall be no step advancement during the 2004–2005 school year."[5]

The oversight board next addressed the second issue of the reopener, namely, the salary schedule and step advancement for the 2005–2006 school year. The oversight board issued its award as follows. It first decided that "[t]o create the salary schedule for the 2005–2006 school year, each step of the salary schedule for the 2004–2005 school year shall be increased by 1.5 [percent]. There shall be no step advancement during the 2005–2006 school year."[6]

The oversight board also issued the part of its award that has become the subject of this litigation. Specifically, it provided as follows: "In the 2005–2006 school year, administrators will be eligible for a performance

[5] In connection with this conclusion, the oversight board's award contained an appendix A-2, entitled "Salary Schedule for 2004–2005 School Year," which listed five categories of employees, each category having an annual salary starting at step 1 and continuing through steps 2, 3, 4, 4a and 5.

[6] In connection with this conclusion, the oversight board's decision contained an appendix A-3, entitled "Salary Schedule for 2005–2006 School Year," listing the same five categories of employees, each category having an annual salary starting at step 1 and continuing through steps 2, 3, 4, 4a and 5. The appendix specifically noted that this schedule "has incorporated a general wage increase of 1.5 [percent] to each step of the salary schedule."

bonus of $4,000 per administrator. The Board of Education shall establish criteria by which administrators shall be evaluated for purposes of determining eligibility for the bonus. The Board of Education shall consult with the [School Administrators of Waterbury] bargaining committee in determining the evaluation criteria. The final criteria established by the Board of Education shall be presented to the [oversight board] for final approval no later than May 1, 2004.[7] It is the intention of the [oversight board] that this bonus be a true incentive, payable only to deserving administrators as determined by the Board of Education in accordance with the established criteria. The determination of administrators who will receive said bonus shall not be subject to challenge pursuant to the grievance arbitration procedure. Such bonus shall be paid in a lump sum, but shall not become part of the salary schedule. However, the lump sum shall be regarded as compensation for pension purposes. Such bonus shall be payable between June 1 and June 30, 2006."

Furthermore, consistent with its obligation under § 10-153f (c) (4) to "[state] in detail the nature of the decision," the oversight board fully discussed its reasoning and the facts underlying its decision on the entire salary schedule issue. It explained that it had rejected the parties' last best offers, namely, for the "purpose of imposing financial management controls on the City and the City [board of education]." It also explained that it was instituting the bonus plan to lay the "groundwork for an incentive-based compensation system that would reward administrators whose performance meets established goals with a significant monetary bonus. Such bonus shall not become part of the salary

---

[7] In fact, the oversight board has extended this time limit. On September 1, 2004, the board of education submitted a plan for this performance bonus, which the oversight board rejected. Thus far, therefore, no such plan has been approved by the oversight board.

schedule, however, the lump sum shall be regarded as compensation for pension purposes." Additionally, the oversight board noted that the "$4,000 bonus provides administrators with an opportunity to receive significant compensation over and above the general wage increase to address the parties' concerns about competitiveness," while at the same time "respecting the financial needs of the City." Moreover, the oversight board clarified that, by this bonus plan, its aims were "to enhance the City [board of education's] ability to effectively manage the schools, to provide a meaningful incentive to administrators to perform at the highest levels in the face of No Child Left Behind legislation and other challenges facing the school district, and to assist the system in becoming a modern school district. The [oversight board] believes that the current award fosters these interests and is an appropriate way to utilize the City's limited financial resources to further such interests."

On April 4, 2004, the plaintiff filed this action, seeking to enjoin the defendants from implementing the December 31, 2003 award.[8] The defendants moved to dismiss

---

[8] Specifically, the plaintiff alleged that the oversight board, by imposing a merit pay plan in contravention of the terms of the reopener, without an opportunity for the parties to the collective bargaining agreement to negotiate with respect thereto, and by authorizing only the board of education to determine the merit pay criteria subject to the board's approval, had violated the teacher act and S.A. 01-1 in the following ways: (a) it contravened the duty of the board of education and the right of the plaintiff to negotiate a manifestly mandatory subject of bargaining; (b) it failed to render a final or definite award; (c) it contravened the requirements of the teacher act and S.A. 01-1 by ordering one of the parties unilaterally to submit a proposal binding on the other after the hearing was over and the award rendered some four months earlier; (d) it exceeded the scope of the very reopener it previously had ordered by including matters not raised or negotiated or even permitted to be raised or negotiated by the parties in the reopener; (e) it was based on information obtained from documentary or testimonial evidence in an extraneous hearing process involving another bargaining unit, namely, teachers, in which members of the plaintiff were neither permitted to attend nor to participate, thereby violating the plaintiff's right to be heard and to make a meaningful presentation to the oversight board; and (f)

the action on the basis that: (1) the defendants' sole remedy to challenge the oversight board's award was a motion to vacate filed pursuant to § 10-153f (c) (8) of the teacher act;[9] and (2) under § 11 (a) (5) of S.A. 01-1,[10] the time limits for such a motion are reduced by

it violated the requirement that the educational interests of the state be implemented by local boards of education, including mandates to the General Statutes pertaining to education within the jurisdiction of the state board of education.

[9] General Statutes § 10-153f (c) (8) provides: "The decision of the arbitrators or a single arbitrator shall be subject to judicial review upon the filing by a party to the arbitration, within thirty days following receipt of a final decision pursuant to subdivision (4) or (7), as appropriate, of a motion to vacate or modify such decision in the superior court for the judicial district wherein the school district involved is located. The superior court, after hearing, may vacate or modify the decision if substantial rights of a party have been prejudiced because such decision is: (A) In violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the panel; (C) made upon unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. In any action brought pursuant to this subdivision to vacate or modify the decision of the arbitrators or single arbitrator, reasonable attorney's fees, costs and legal interest on salary withheld as the result of an appeal of said decision may be awarded in accordance with the following. Where the board of education moves to vacate or modify the decision and the decision is not vacated or modified, the court may award to the organization which is the exclusive representative reasonable attorney's fees, costs and legal interest on salary withheld as the result of an appeal; or, where the organization which is the exclusive representative moves to vacate or modify the decision and the decision is not vacated or modified, the court may award to the board of education reasonable attorney's fees, costs and legal interest on salary withheld as the result of an appeal."

[10] Section 11 (a) of S.A. 01-1 provides in relevant part: "In carrying out the purposes of this act, the board shall have the following powers, duties and functions . . . (5) With respect to labor contracts in or subject to binding arbitration, serve as the binding arbitration panel. The board shall have the power to impose binding arbitration upon the parties any time after the seventy-fifth day following the commencement of negotiations. If, upon the effective date of this act, the parties are in binding arbitration, the board shall immediately replace any established binding arbitration panel. The time limits in the applicable provisions of the general statutes or any public or special acts governing binding arbitration shall be reduced by one-half. The board shall not be limited to consideration and inclusion

one half. Thus, the defendants maintained, the thirty day time limit ordinarily provided by § 10-153f (c) (8) was reduced to fifteen days and, therefore, the plaintiff's failure to file such a motion by January 15, 2004, deprived the court of subject matter jurisdiction over this action for injunctive relief. The trial court agreed, and dismissed the action. This appeal followed.

The plaintiff claims that the trial court improperly dismissed the action because the provisions of § 10-153f (c) (8) of the teacher act do not apply to the oversight board's award because it was not a "final decision" within the meaning of that statutory provision. In particular, the plaintiff contends that the award was not such a "final decision" because (1) it was not rendered pursuant to either subdivision (4) or (7) of § 10-153f (c), and (2) the bonus plan contemplated by the award was "without any standards, definitions, rules, procedures, criteria, or text of any kind," and no defined bonus plan has yet been approved by the oversight board. See footnote 7 of this opinion. We disagree.

Whether the provisions of § 10-153f (c) (8) of the teacher act apply to the award, which was made pursuant to S.A. 01-1, presents a question of statutory interpretation, over which our scope of review is plenary. See *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 742, 865 A.2d 428 (2005). The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. See *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 268 Conn. 222, 230–31, 842 A.2d 1089 (2004). In the present case,[11] that process requires us to examine the statutory

in the collective bargaining agreement of the last best offers or the matters raised by or negotiated by the parties . . . ."

[11] We are mindful of the fact that General Statutes § 1-2z requires that, before we go beyond the text of a statute to determine its meaning, we first must determine that it is not plain and unambiguous. See *Bell Atlantic*

language, its legislative history, the circumstances surrounding its enactment, and the legislative policy it was designed to implement. See id.

We begin with what we recently have characterized as "the unique legal landscape in which this case arises"; *Local 1339, International Assn. of Firefighters* v. *Waterbury*, 274 Conn. 374, 382, 876 A.2d 511 (2005); namely, the enactment of S.A. 01-1. "In 2001, as a result of many years of gross fiscal mismanagement, the city was in a state of financial crisis. See S.A. 01-1, § 1. Specifically, the city had underfunded its pensions for years and was paying its pension liabilities out of the city's general fund. In addition, the city had been paying health care benefits, the cost of which were rapidly rising, out of the city's general fund. As a result of these and other liabilities, the city's bond rating had been downgraded. The crisis threatened not only the city, but also the fiscal reputation of the state, which acts essentially as guarantor of certain of the city's obligations. [See S.A. 01-1, § 1.]

"To address the crisis, the legislature enacted S.A. 01-1, effective upon its passage on March 9, 2001. . . . In accordance with the special act, the city was required to undertake certain fiscal and management controls. As a further measure, the legislature created the oversight board to ensure that order was restored to the city's finances. S.A. 01-1, §§ 10 and 11. The special act confers broad authority on the oversight board to take the necessary measures to accomplish this goal. S.A. 01-1, § 11. . . . Special Act 01-1 supersedes all other provisions of the General Statutes enacted prior to the

*NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, 273 Conn. 240, 250–51 n.13, 869 A.2d 611 (2005). Neither party contends, however, that the statutory text of either § 10-153f (c) (8) of the teacher act or S.A. 01-1 is plain and unambiguous as applied to the facts of the present case. We agree. Therefore, we are free to turn to extratextual sources when examining how the meaning of the two pieces of legislation intersect.

effective date of the act except that, unless expressly provided in this act, nothing in [the] act shall affect the provisions of [the teacher act] . . . . S.A. 01-1, § 20.

"The extent of the authority conferred on the [oversight] board is nothing short of extraordinary. Nowhere is that more evident than in the context of collective bargaining agreements for the [board of education's] employees. See 44 S. Proc., Pt. 2, 2001 Sess., p. 494, remarks of Senator Stephen R. Somma (noting that [t]he labor provisions . . . are extraordinary but the times are extraordinary in Waterbury)." (Citation omitted; internal quotation marks omitted.) *Local 1339, International Assn. of Firefighters* v. *Waterbury,* supra, 274 Conn. 382–83. Indeed, the legislative history of S.A. 01-1 reveals that the legislature granted "essentially absolute power . . . to the oversight board . . . to set the terms of labor contracts, even when those terms were not in dispute between the parties . . . ." Id., 384 n.4.

With this background in mind, we turn to a brief overview of the teacher act, and its significant contrasts with S.A. 01-1. In general terms, under the teacher act, following unsuccessful bargaining and mediation between a teachers or administrators union and a local board of education, the parties are subject to binding interest arbitration before an arbitration panel selected from among those appointed to serve as arbitrators pursuant to § 10-153f (a). See General Statutes § 10-153f (a) through (c). The arbitration panel must conclude its hearing within twenty-five days after its commencement. See General Statutes § 10-153f (c) (3). The arbitration panel is required to issue its decision within twenty days of the completion of the hearing, and must "incorporate [in its decision] those items of agreement the parties have reached prior to its issuance." General Statutes § 10-153f (c) (4). As to each of the other items, the parties are required to submit to the arbitration panel their last best offers, and the panel is required

to accept one of those last best offers. See General Statutes § 10-153f (c) (4). Additionally, the arbitration panel is required to file copies of its decision with the state commissioner of education (commissioner), each town clerk in the school district, and the parties. See General Statutes § 10-153f (c) (4). The decision of the arbitrators is final and binding upon the parties unless it is rejected in accordance with subdivision (7) of subsection (c) of § 10-153f. See General Statutes § 10-153f (c) (4). Under subdivision (7), the legislative body of the school district also may reject the decision by a two-thirds vote within twenty-five days of receipt of the decision. See General Statutes § 10-153f (c) (7). Upon such a rejection, the commissioner selects a new, second arbitration panel, which conducts a review confined to the record and briefs of the first arbitration proceeding, and within five days of completion of that review must issue a second decision, again limited to the acceptance of the last best offer of either party on the unresolved issues. See General Statutes § 10-153f (c) (7). Under the teacher act, therefore, the parties set the terms of their collective bargaining agreement, subject only to acceptance by the arbitration panel of their last best offers on those specific issues on which they cannot agree.

Although we never have specifically held it to be so, we now conclude that judicial review of the decision of the arbitrators under the teacher act must be by way of a motion to modify or vacate, filed in the Superior Court, "within thirty days following receipt of a final decision pursuant to subdivision (4) or (7), as appropriate . . . ." General Statutes § 10-153f (c) (8).[12] This

---

[12] The criteria pursuant to which the court reviews the arbitral decision are set forth in § 10-153f (c) (8) of the teacher act, and are identical in phrasing to the scope of judicial review set forth in the Uniform Administrative Procedure Act for review of final decisions of administrative agencies. See General Statutes § 4-183 (j). Specifically, the court may vacate or modify the arbitrators' decision if "substantial rights of a party have been prejudiced because such decision is: (A) In violation of constitutional or statutory

conclusion is the necessary implication of the various stringent time limitations embodied in the teacher act, and our prior holdings that those time limitations are "mandatory time sequences related to the budget submission date"; *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 507, 522 A.2d 264 (1987); as well as the fact that "the language of subdivisions (7) and (8) of § 10-153f (c), when read together, demonstrates that there is only one appeal as of right under the statute and that appeal may be brought solely in the Superior Court." *Education Assn. of Clinton* v. *Board of Education*, 259 Conn. 5, 20, 787 A.2d 517 (2002). It would be inconsistent with these stringent limits to permit a judicial challenge to a binding arbitration award at any time, limited only to a statute of limitations, if applicable, or to the equitable doctrine of laches.

This conclusion is also supported by our previous holdings requiring a party to exhaust its administrative remedies. For example, when a statute provides for an adequate remedy, "we have long adhered to the rule that, where a statutory right of appeal from an administrative decision exists, an aggrieved party may not bypass the statutory procedure and instead bring an independent action to test the very issue which the appeal was designed to test." (Internal quotation marks omitted.) *LaCroix* v. *Board of Education*, 199 Conn. 70, 78, 505 A.2d 1233 (1986); see also *Laurel Park, Inc.* v. *Pac*, 194 Conn. 677, 685, 485 A.2d 1272 (1984).

In the present case, § 10-153f (c) (8) sets forth a statutory mechanism through which an aggrieved party

provisions; (B) in excess of the statutory authority of the panel; (C) made upon unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ." General Statutes § 10-153f (c) (8).

can appeal from an arbitrator's decision. As noted in the statute, this mechanism is the filing of a motion to modify or vacate the decision in the Superior Court, not a request for a temporary restraining order and permanent injunction as was pursued by the plaintiff. Thus, under the teacher act, if a decision of the arbitration panel is not rejected by the municipality's legislative body as provided in § 10-153f (c) (7), a motion to vacate must be filed in court within thirty days of the panel's decision. See General Statutes § 10-153f (c) (4) and (8). If, however, the decision is rejected by the legislative body, a motion to vacate must be filed in court within thirty days of the second arbitration panel's decision. See General Statutes § 10-153f (c) (4) and (8).

Special Act 01-1 differs from the teacher act in several ways, however, that are significant to the present case. First, under § 11 (a) (4) (B)[13] and (5),[14] the oversight board has uniquely broad powers regarding collective bargaining contracts. In particular, the oversight board must serve as the arbitration panel for labor contracts

---

[13] Section 11 (a) of S.A. 01-1 provides in relevant part: "In carrying out the purposes of this act, the board shall have the following powers, duties and functions . . . (4) (B) Approve or reject all modifications, amendments or reopeners to collective bargaining agreements entered into by the city or any of its agencies or administrative units, including the board of education. If the board rejects a proposed amendment to a collective bargaining agreement, the parties to the agreement will have ten days from the date of the board's rejection to consider the board's concerns. In rejecting an amendment to an agreement, the board shall indicate the specific provisions of the proposed amendment which caused the rejection, as well as its rationale for the rejection. The board may, at its option, indicate the total cost impact or savings it would find acceptable in a new amendment. After the expiration of such ten-day period, the board shall approve or reject any revised amendment. If the parties have been unable to reach a revised amendment or the board rejects such revised amendment, the board shall set forth the terms of the new amendment, which shall be binding upon the parties. In establishing the terms of the new agreement, as well as in making a determination to reject a proposed amendment, the parties shall have an opportunity to make a presentation to the board . . . ."

[14] See footnote 10 of this opinion for the text of S.A. 0-1, § 11 (a) (5).

subject to binding arbitration. See S.A. 01-1, § 11 (a)
(5). This mandate includes, as in the present case,
"reopeners to collective bargaining agreements entered
into by . . . the board of education." S.A. 01-1, § 11 (a)
(4) (B). Second, in making its award, the oversight
board is not limited to the parties' "last best offers or
the matters raised by or negotiated by" them. S.A. 01-
1, § 11 (a) (5). Instead, it has the power to "set forth
the terms of the new amendment, which shall be binding
upon the parties." S.A. 01-1, § 11 (a) (4) (B). Thus, in
contrast to the teacher act, it is the oversight board,
and not the parties, that ultimately sets the terms of
the collective bargaining agreement. Third, when the
oversight board sits as a binding arbitration panel, the
ordinary statutory time limits "governing binding arbi-
tration shall be reduced by one-half." S.A. 01-1, § 11 (a)
(5). Fourth, as provided in § 17 (a) and (b) of S.A. 01-
1, although S.A. 01-1 contains provisions for judicial
enforcement of the oversight board's orders by the
attorney general, the secretary of the office of policy
and management, or the oversight board itself, it does
not contain any specific provision regarding judicial
review of its orders by a party aggrieved thereby.

Finally, § 20 of S.A. 01-1 provides: "This act is
intended to authorize the city to fund its accumulated
deficits, to establish a board to review the financial
affairs of the city in order to maintain access to the
public markets and to restore financial stability to the
city, and shall be liberally construed to accomplish its
intent. The provisions of this act shall supersede any
provisions of the general statutes, any public or special
act and the charter of the city enacted prior to or subse-
quent to this act other than a subsequent act of the
General Assembly which specifically states that it
supersedes this act except that, unless expressly pro-
vided in this act, nothing in this act shall affect the
provisions of the Municipal Employees Relations Act,

sections 7-467 to 7-477, inclusive, of the general statutes, or the provisions of the Teacher Negotiation Act, sections 10-153a to 10-153o, inclusive, of the general statutes." This provision means that S.A. 01-1 is to be interpreted so as not to supersede the teacher act entirely, but that the two statutes are to be interpreted so as to harmonize with each other, to the extent possible. To the extent that they cannot be harmonized, however, the provisions of S.A. 01-1 must prevail. We reach these conclusions for the following reasons.

First, the language of § 20 of S.A. 01-1 strongly suggests that the two statutory provisions are to be read so as to coexist. Specifically, § 20 provides that S.A. 01-1 "shall supersede any provisions of the general statutes . . . enacted prior to . . . this act . . . except that, unless expressly provided in this act, nothing in this act shall affect the provisions of . . . the Teacher Negotiation Act . . . ." Thus, unlike other "provisions of the general statutes," which S.A. 01-1 supersedes, the teacher act is not affected "unless expressly provided" in S.A. 01-1 itself. Furthermore, the express references in § 11 (a) (4) (A) and (B) of S.A. 01-1 to the oversight board's powers regarding collective bargaining agreements entered into by the city's "board of education" supports such a coexistence, because such agreements are also necessarily governed by the teacher act.

The question that arises, however, is the meaning of the language of § 20 of S.A. 01-1 that, *"unless expressly provided in this act, nothing in this act shall affect the provisions of . . . the Teacher Negotiation Act . . . ."* (Emphasis added.) We acknowledge that, as the plaintiff suggests, it can be read to require that, in order for a provision of S.A. 01-1 to prevail over the terms of the teacher act, there must be a provision in S.A. 01-1 that "expressly" refers to the teacher act and provides that it overrides the teacher act; otherwise, the terms of the

teacher act remain unaffected. The problem with this reading, however, is that it would render S.A. 01-1 wholly inapplicable to the teacher act, because there are no such express references in S.A. 01-1. That inapplicability, moreover, would be in direct conflict with the collective bargaining provisions of § 11 (a) (4) (A) and (B), and § 11 (a) (5) of S.A. 01-1, which clearly contemplate—albeit without any express reference to the teacher act—collective bargaining agreements governed by the teacher act. Consequently, in order to make sense of and to give a reasonable meaning to the language in question, we interpret it to mean that the provisions of the teacher act remain unaffected except to the extent that they conflict with S.A. 01-1.[15]

Second, the conclusion that, when the two statutes conflict the provisions of S.A. 01-1 prevail over those of the teacher act, is supported by both the language and purpose of S.A. 01-1. Section 1 of S.A. 01-1 declares "that a financial emergency exists" in the city that is

[15] Indeed, the plaintiff concedes that some provisions of the teacher act are overridden by S.A. 01-1, even in the absence of such specific reference in S.A. 01-1. Thus, the plaintiff's argument can be construed to be that subdivisions (4) and (7) of § 10-153f (c) provide for a process of binding arbitration that is not specifically superseded by S.A. 01-1, including the necessity of filing a final decision with the legislative body of the local authority and the commissioner. This reading of the teacher act suggests that arbitration is binding under subdivision (4) of § 10-153f (c), unless it is rejected under subdivision (7) by a two-thirds vote of the legislative body of the local school district. Section 11 (a) (4) (B) of S.A. 01-1 provides, however, that the oversight board is not bound by the last best offers of the parties and can set forth the terms of the new agreement "which shall be binding upon the parties." Unlike subdivision (4) of § 10-153f (c) of the teacher act, there is not an exception within S.A. 01-1 to the binding nature of the oversight board's decision. Additionally, we note that the relevant terms of both the teacher act and S.A. 01-1 govern the same topic, namely, when the terms of the arbitration award become binding. Therefore, given that the plaintiff has implicitly conceded that S.A. 01-1 does not need specifically to mention the teacher act, while at the same time overriding some of the provisions of the teacher act, as well as the fact that the provisions at issue conflict with each other, the requirements of S.A. 01-1 control and the oversight board's decision must be deemed final and binding.

"detrimental to the general welfare of the city and the state," that the city's access to financial markets and the resolution of the emergency are matters "of paramount public interest," and that to achieve that resolution it is necessary to impose "financial management controls and the creation of" the oversight board, "all in order to achieve or maintain access to public credit markets, to fund the city's accumulated deficits and to restore financial stability to the city . . . ." Similarly, § 20 of S.A. 01-1 provides that the act "is intended to authorize the city to fund its accumulated deficits, to establish a board to review the financial affairs of the city in order to maintain access to the public markets and to restore financial stability to the city, and shall be liberally construed to accomplish its intent." In the absence of any clear expression of the legislature to the contrary, these overriding public necessities compel the conclusion that any conflict between the teacher act and the provisions of S.A. 01-1 be resolved in favor of the latter.

Applying these principles to the facts of the present case, we conclude that the provisions of § 10-153f (c) (8) of the teacher act apply to the award made by the oversight board to the extent that those provisions do not conflict with S.A. 01-1 and that, to the extent that they do conflict, the provisions of S.A. 01-1 prevail over those of § 10-153f (c) (8). Section 10-153f (c) (8) provides for judicial review of a final decision of an arbitration panel. It is undisputed that the oversight board in the present case was serving as the arbitration panel for purposes of the reopener in question. Although there is no specific provision in S.A. 01-1 for judicial review of actions of the oversight board, the oversight board does not contend that its actions are insulated from any judicial review. Indeed, the oversight board contends that, when it acts as a binding arbitration panel under the teacher act, it is subject to judicial review pursuant to a motion to vacate thereunder. Conse-

quently, subjecting the award of the oversight board to judicial review pursuant to § 10-153f (c) (8) presents no conflict. Therefore, we conclude that, as a general matter, the award of the oversight board, made in its capacity as the arbitration panel under the teacher act, was subject to judicial review under § 10-153f (c) (8). It follows from this conclusion that the plaintiff seeking to challenge the award was required to file a motion to vacate under that section, as modified, however, by S.A. 01-1 in order to resolve any conflicts.

The respective time limits do, however, present such a conflict. Whereas under § 10-153f (c) (8) of the teacher act the motion to vacate must be filed within thirty days of the final decision, under § 11 (a) (5) of S.A. 01-1 "[t]he time limits . . . governing binding arbitration shall be reduced by one-half." Thus, the thirty day time limit for filing a motion to vacate under § 10-153f (c) (8) of the teacher act was reduced to fifteen days, and the plaintiff was required to file such a motion by January 15, 2004.

A further conflict between the two statutory schemes arises from the provision in § 10-153f (c) (8) of the teacher act that, as the plaintiff contends, the final decision of the arbitration panel that triggers a motion to vacate is such a decision "pursuant to subdivision (4) or (7), as appropriate . . . ." As we have indicated, under subdivision (4) of § 10-153f (c), the decision of the arbitration panel is required to be filed with the town clerk of the local school district and with the commissioner. The obvious purpose of these required filings is to notify the local legislative body, in this case the board of aldermen, and the commissioner for the purpose of a potential rejection of the award by the local legislative body and a consequent second arbitration managed by the commissioner pursuant to subdivision (7). As we have explained, subdivision (7) of § 10-153f (c) requires the commissioner, upon such a legislative rejection, to set up a second, record-based arbitration

that, in turn, is also subject to judicial review under § 10-153f (c) (8). Both the first and second arbitration panels, however, are limited to the parties' last best offers. Such a system, therefore, is in direct conflict with the plenary powers and duties of the oversight board when it acts as the arbitration panel for purposes of binding arbitration and, as such, is not limited to the parties' last best offers. Thus, it would be wholly contrary to the purpose of S.A. 01-1 to require the filing of the award with the town clerk and commissioner so as to subject it to a legislative rejection by the board of aldermen and a subsequent second arbitration, which only could be conducted by the oversight board in any event. Therefore, we conclude that the provision of § 10-153f (c) (8) of the teacher act requiring that the final decision of the arbitration panel be "pursuant to subdivision (4) or (7), as appropriate," insofar as that provision requires a filing of the oversight board's award with the Waterbury town clerk and the commissioner, and insofar as it permits a legislative rejection by the board of aldermen and a second arbitration proceeding, conflicts with S.A. 01-1 and does not apply to the oversight board's award in the present case.

Much the same reasoning applies to the plaintiff's claim that the award of the oversight board was not "final" for purposes of judicial review pursuant to § 10-153f (c) (8) because the bonus plan part of it was too uncertain and because it required the board of education to return with a recommended bonus plan subject to the approval of the oversight board. We reject this claim. We conclude that the indefinite quality of the bonus plan part of the award did not deprive that award of sufficient finality for purposes of judicial review under § 10-153f (c) (8) and that, therefore, the plaintiff was required to file a motion to vacate in order to challenge it.

Under § 10-153f (c) (4) of the teacher act,[16] as modified by § 11 (a) (5) of S.A. 01-1,[17] the time limit for the oversight board to issue its award was reduced to ten days from the end of the hearing. Moreover, the fact that the oversight board was not limited to the parties' last best offers necessarily means that, when it did decide to reject them and to institute the bonus plan of compensation, it would not have had the details of such a plan before it. It is not reasonable to think that the oversight board could have fashioned a detailed bonus plan on its own in that short time period, given its vast responsibilities for the financial recovery of the city. Thus, to the extent, if any, that the provisions of the teacher act would have imposed a greater degree of finality on a traditional arbitration panel, a question that we need not decide, that imposition would conflict with the provisions and overall purposes of S.A. 01-1. We note in this regard that, despite the contention of the plaintiff to the contrary, the essentials of and reasoning behind this part of the award were sufficiently spelled out so that, had the plaintiff filed a motion to vacate, the plaintiff could have mounted any legal challenge to the award under such a motion that it attempts to mount pursuant to this civil action.

In addition, to hold that this part of the award rendered the award less than final for purposes of a motion to vacate would lead to a result that would be inconsistent with the scheme of S.A. 01-1. The bonus plan order was but one aspect of the oversight board's overall award, the rest of which set definite parameters for salaries and step advancements for both the 2004–2005 and the 2005–2006 school years. When the oversight

---

[16] General Statutes § 10-153f (c) (4) provides in relevant part: "After hearing all of the issues, the arbitrators or the single arbitrator shall, within twenty days, render a decision in writing, signed by a majority of the arbitrators or the single arbitrator, which states in detail the nature of the decision and the disposition of the issues by the arbitrators or the single arbitrator. . . ."

[17] See footnote 10 of this opinion.

board made the award, it was essential for the prudent management of the city's finances, consistent with the overriding purposes of S.A. 01-1, that the oversight board know with reasonable and prompt definiteness what the education budgets would be for those school years. The reduced time limits for judicial review of the award are consistent with the notion that arbitral awards such as this one be rendered final and no longer subject to judicial review as soon as possible, so that any budgetary questions be answered sooner rather than later. Thus, deferring the time for a motion to vacate the award in question until the bonus plan part of it was set in stone, as the plaintiff's argument suggests, would have also necessarily left in limbo those parts of the award dealing with the salary schedules for the 2004–2005 and the 2005–2006 school years. Such a result would have been in conflict with the overriding purposes of S.A. 01-1 and with the concomitant obligation of the oversight board thereunder to manage the city's finances prudently.

The judgment is affirmed.

In this opinion the other justices concurred.